1  Jeffrey F. Barr (NV Bar No. 7269)
   8275 South Eastern Avenue, Suite 200
2  Las Vegas, NV 89123
   (702) 631-4755
3  barrj@ashcraftbarr.com

4  Thomas R. McCarthy* (VA Bar No. 47145)
   Gilbert C. Dickey* (VA Bar No. 98858)
5  Conor D. Woodfin* (VA Bar No. 98937)
   1600 Wilson Boulevard, Suite 700
6  Arlington, VA 22209
   (703) 243-9423
7  tom@consovoymccarthy.com
   gilbert@consovoymccarthy.com
8  conor@consovoymccarthy.com

9  *Counsel for the Republican National Committee, the Nevada Republican Party, and Scott Johnston*
   *Pro hac vice application forthcoming
10
   Sigal Chattah (NV Bar No. 8264)
11 5875 S. Rainbow Blvd #204
   Las Vegas, NV 89118
12 (702) 360-6200
   sigal@thegoodlawyerlv.com
13
   *Counsel for the Nevada Republican Party*
14

15                  UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
16

17 | REPUBLICAN NATIONAL COMMITTEE, NEVADA REPUBLICAN PARTY, and SCOTT JOHNSTON, | |
   | --- | --- |
   | | No. _____ |
18 | Plaintiffs, | |
19 | v. | |
   | | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
20 | FRANCISCO AGUILAR, *in his official capacity as Nevada Secretary of State*; LORENA PORTILLO, *in her official capacity as the Registrar of Voters for Clark County*; WILLIAM "SCOTT" HOEN, AMY BURGANS, STACI LINDBERG, and JIM HINDLE, *in their official capacities as County Clerks*, | |
21 | | |
22 | | |
23 | Defendants. | |
24

25

Plaintiffs the Republican National Committee, the Nevada Republican Party, and Scott Johnston bring this action under the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. §20507, against Defendants for declaratory and injunctive relief. Plaintiffs allege as follows:

## INTRODUCTION

1. Section 8 of the NVRA requires States to maintain clean and accurate voter registration records.

2. Nevada has failed to live up to the NVRA's requirements.

3. At least five counties in Nevada have inordinately high voter registration rates.

4. At least three Nevada counties have more registered voters than they have adult citizens who are over the age of 18. That number of voters is impossibly high.

5. An additional two counties have voter registration rates that exceed 90 percent of adult citizens over the age of 18. That figure far eclipses the national and statewide voter registration rate in recent elections.

6. Based on this and other evidence, Defendants are failing to make a reasonable effort to conduct appropriate list maintenance as required by the NVRA.

## JURISDICTION AND VENUE

7. The Court has subject-matter jurisdiction because this case alleges violations of the NVRA. *See* 28 U.S.C. §1331; *Ex parte Young*, 209 U.S. 123 (1908).

8. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District and because some Defendants "reside" here. 28 U.S.C. §1391.

Complaint for Declaratory and Injunctive Relief

# PARTIES

9. Plaintiff, the Republican National Committee (RNC), is the national committee of the Republican Party, as defined by 52 U.S.C. §30101(14), with its principal place of business at 310 First Street S.E., Washington, DC 20003.

10. The RNC represents over 30 million registered Republicans in all 50 states, the District of Columbia, and the U.S. territories. It is comprised of 168 voting members representing state Republican Party organizations, including three members who are registered voters in Nevada.

11. The RNC works to elect Republican candidates to state and federal office. In November 2024, its candidates will appear on the ballot in Nevada for numerous federal and state offices.

12. The RNC has vital interests in protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes in Nevada elections and elsewhere. The RNC brings this suit to vindicate its own rights in this regard, and in a representational capacity to vindicate the rights of its members, affiliated voters, and candidates.

13. The RNC and its members are concerned that Defendants' failure to comply with the NVRA's voter-list maintenance obligations undermines the integrity of elections by increasing the opportunity for ineligible voters or voters intent on fraud to cast ballots. The RNC thus monitors state and local election officials' compliance with their NVRA list maintenance obligations through publicly available records from jurisdictions across the nation.

14. In addition, the RNC relies on voter registration lists to determine its plans and budgets. The RNC relies on registration lists to estimate voter turnout, which

informs the number of staff the RNC needs in a given jurisdiction, the number of volunteers needed to contact voters, and how much the RNC will spend on paid voter contacts. If voter registration lists include names of voters who should no longer be on the list, the RNC may spend more resources on mailers, knocking on doors, and otherwise trying to contact voters, or it may misallocate its scarce resources among different jurisdictions.

15. Plaintiff Nevada Republican Party (NVGOP) is a political party in Nevada with its principal place of business at 2810 West Charleston Blvd. #69, Las Vegas, NV 89102. The Nevada Republican Central Committee (NRCC) is the NVGOP's governing body. The NVGOP and NRCC exercise their federal and state constitutional rights of speech, assembly, petition, and association to "provide the statutory leadership of the Nevada Republican Party as directed in the Nevada Revised statutes," to "recruit, develop, and elect representative government at the national, state, and local levels," and to "promote sound, honest, and representative government at the national, state and local levels." NRCC Bylaws, art. II, §§1.A-1.C.

16. The NVGOP represents over 550,000 registered Republican voters in Nevada.

17. The NVGOP has the same interests in this case as the RNC and seeks to vindicate those interests in the same ways.

18. Plaintiff Scott Johnston is a registered Nevada voter and 60-year resident of Nevada. He regularly votes in Nevada's primary and general elections. He plans to vote in Nevada's upcoming elections, including for U.S. President, U.S. Congress, and other federal, local, and statewide offices and ballot measures.

4

Complaint for Declaratory and Injunctive Relief

19. Because Defendants do not maintain accurate voter rolls, Mr. Johnston reasonably fears that ineligible voters can and do vote in Nevada elections. Those votes will dilute his legitimate vote. And Nevada's inaccurate rolls undermine Mr. Johnston's confidence in the integrity of Nevada elections, which also burdens his right to vote.

20. Mr. Johnston is an active member of the Republican Party. He works in Nevada to advance conservative policies and to help elect Republican candidates. He is a member of the Washoe Central Committee, which is the governing body of the Washoe County Republican Party. Mr. Johnston has served as a precinct captain for the Galena Forest Estates area since 2020, and a Nevada State Central Committee person since 2021.

21. Because Defendants do not maintain accurate voter rolls, Plaintiffs must spend more of their time and resources monitoring Nevada elections for fraud and abuse, mobilizing voters to counteract it, educating the public about election-integrity issues, and persuading elected officials to improve list maintenance.

22. Plaintiffs have expended substantial time and resources investigating Defendants' failure to comply with their list-maintenance obligations. They have communicated with Nevada officials and concerned members about Defendants' failures, and they have researched statements made by Defendants in their correspondence.

23. Were it not for Defendants' failure to comply with their list-maintenance obligations, Plaintiffs would have expended those resources on other activities or would not have expended them at all. Instead, they diverted their scarce resources to counteract Defendants' noncompliance and to protect the rights of their members and supporters.

24. Defendant Francisco Aguilar is the Secretary of State of Nevada. He serves "as the Chief Officer of Elections" for Nevada and "is responsible for the execution and enforcement of the provisions of title 24 of NRS and all other provisions of state and federal law relating to elections in" Nevada. Nev. Rev. Stat. §293.124. He is sued in his official capacity.

25. Defendant Lorena Portillo is the Registrar of Voters for Clark County. She is the county's chief election officer and plays a direct role in list maintenance. *See* Nev. Rev. Stat. §§244.164, 293.530. Defendant Portillo is sued in her official capacity.

26. Defendant William "Scott" Hoen is the Clerk for Carson City. He is the county's chief election officer and plays a direct role in list maintenance. *See* Nev. Rev. Stat. §§293.503, 293.530. Defendant Hoen is sued in his official capacity.

27. Defendant Amy Burgans is the Clerk for Douglas County. She is the county's chief election officer and plays a direct role in list maintenance. *See* Nev. Rev. Stat. §§293.503, 293.530. Defendant Burgans is sued in her official capacity.

28. Defendant Staci Lindberg is the Clerk for Lyon County. She is the county's chief election officer and plays a direct role in list maintenance. *See* Nev. Rev. Stat. §§293.503, 293.530. Defendant Lindberg is sued in her official capacity.

29. Defendant Jim Hindle is the Clerk for Storey County. He is the county's chief election officer and plays a direct role in list maintenance. *See* Nev. Rev. Stat. §§293.503, 293.530. Defendant Hindle is sued in his official capacity.

# BACKGROUND

## I. Federal law requires States to maintain accurate voter rolls.

30. Congress enacted the NVRA "to protect the integrity of the electoral process." 52 U.S.C. §20501(b)(3). Specifically, section 8 was enacted "to ensure that accurate and current voter registration rolls are maintained." *Id.* §20501(b)(4).

31. Retaining voter rolls bloated with ineligible voters harms the electoral process, heightens the risk of electoral fraud, and undermines public confidence in elections. "Confidence in the integrity of our electoral processes is," in turn, "essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

32. Section 8 obligates States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence. 52 U.S.C. §20507(a)(4). "[F]ederal law makes this removal mandatory." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1842 (2018).

33. Each State's program for maintaining voter-registration lists must be "uniform, non-discriminatory, and in compliance with the Voting Rights Act." 52 U.S.C. §20507(b)(1).

34. Specifically, section 8 requires States to "remove the names of ineligible voters from the official lists of eligible voters by reason of (A) the death of the registrant or (B) a change in the residence of the registrant" to outside her current voting jurisdiction. 52 U.S.C. §20507(4)(A)-(B).

35. The Help America Vote Act (HAVA) also mandates that states adopt computerized statewide voter registration lists and maintain them "on a regular basis" in accordance with the NVRA. 52 U.S.C. §21083(a)(2)(A).

36. States must "ensure that voter registration records in the State are accurate and are updated regularly," an obligation that includes a "reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. §21083(a)(4).

37. HAVA's list-maintenance requirements include coordination with "State agency records on death" and "State agency records on felony status" to facilitate the removal of individuals who are deceased or rendered ineligible under state law due to a felony conviction. 52 U.S.C. §21083(a)(2)(A)(ii)(I)-(II).

38. According to the bipartisan Carter-Baker Commission, "registration lists lie at the root of most problems encountered in U.S. elections." Comm. on Federal Election Reform, Building Confidence in U.S. Elections 10 (Sept. 2005) (Carter-Baker Report). Inaccurate voter rolls that contain "ineligible, duplicate, fictional, or deceased voters" invite "fraud." *Id.* Although voter fraud is often difficult to detect, "the risk of voter fraud [is] real," and can "affect the outcome of a close election." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). And regardless of whether fraud is detected, "the perception of possible fraud contributes to low confidence in the system." Carter-Baker Report, *supra*, at 18. The Supreme Court agrees. *See Crawford*, 553 U.S. at 193-97.

39. Other courts and experts have likewise recognized that voter fraud is both real and notoriously "difficult to detect and prosecute." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 396 (5th Cir. 2020); *see also Griffin v. Roupas*, 385 F.3d 1128, 1130-31 (7th

Cir. 2004) ("Voting fraud is a serious problem in U.S. elections … and it is facilitated by absentee voting."); *Veasey v. Perry*, 71 F. Supp. 3d 627, 641 (S.D. Tex. 2014) (finding broad "agreement that voter fraud actually takes place in abundance in connection with absentee balloting"); *Tex. Democratic Party*, 961 F.3d at 414 (Ho, J., concurring) ("[C]ourts have repeatedly found that mail-in ballots are particularly susceptible to fraud.").

40. Voter fraud is very real in Nevada. Several recent elections have suffered from voter fraud. *See, e.g.*, Nev. Att'y Gen., *Attorney General Ford Announces Guilty Plea of Las Vegas Man Charged with Voter Fraud* (Nov. 16, 2021), https://perma.cc/WN9D-T9V2; Nev. Att'y Gen., *Attorney General Ford Announces Guilty Plea of Las Vegas Man for Voting Twice in 2016 Election* (Feb. 17, 2021), https://perma.cc/XP2E-EDWE.

41. Maintaining accurate voter rolls is especially important given Nevada's recent transition to universal mail-in voting. Since the passage of Assembly Bill 321 in 2021, all active registered voters in Nevada receive a ballot by mail unless they submit an opt-out form to their respective county clerks. Mailing ballots based on inaccurate registration lists further damages the integrity of Nevada's elections.

42. To help address voter fraud and ensure compliance with federal election law, the NVRA includes a private right of action. It empowers any "person who is aggrieved by a violation" to "provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. §20510(b)(1). "If the violation is not corrected within 90 days after receipt of a notice, … the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief." *Id.* §20510(b)(2).

**II. Defendants have specific obligations under the NVRA.**

43. Federal and state law make Nevada's Secretary of State primarily responsible for list maintenance.

9

Complaint for Declaratory and Injunctive Relief

44. The NVRA requires each State to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under" the law. 52 U.S.C. §20509.

45. Nevada law designates the Secretary of State as the State's chief election officer charged with overseeing and maintaining voter registration. *See* Nev. Rev. Stat. §293.124.

46. Ultimate responsibility for coordinating and overseeing all list maintenance activities rests with the Secretary. A chief election official "may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such a program is not reasonably conducted." *United States v. Missouri*, 535 F.3d 844, 850 (8th Cir. 2008).

47. Indeed, "the NVRA's centralization of responsibility counsels against ... buck passing." *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014). Courts have rejected the view that, "once the state designates" a local entity to assist with complying with federal law, "her responsibility ends." *Harkless v. Brunner*, 545 F.3d 445, 452 (6th Cir. 2008). "[I]f every state passed legislation delegating" their responsibilities "to local authorities, the fifty states would be completely insulated from any enforcement burdens." *Id.*

### III. Defendants have failed to comply with their list-maintenance obligations.

48. Just a decade ago, "24 million voter registrations in the United States—about one in eight—[were] either invalid or significantly inaccurate." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 760 (2018) (citing Pew Center on the States, Election Initiatives Issue Brief (Feb. 2012)). Nevada is no exception, and the evidence underscores the *in*accuracy of Nevada's registration records.

10
Complaint for Declaratory and Injunctive Relief

49. Based on data gathered from the U.S. Census Bureau's 2022 American Community Survey and the most up-to-date count of registered active voters available from the Nevada Secretary of State, three counties have more active registered voters than voting-eligible citizens, and two other counties have suspiciously high rates of active voter registration.

50. Comparing the registered active voter count to the 2022 Census data reveals that these three counties have voter registration rates at or above 100 percent: Douglas (104%), Lyon (105%), and Storey (113%).

51. An additional two counties have voter registration rates of 90 percent or greater: Carson City (92%) and Clark (91%).

52. These voter registration rates are abnormally or, in the case of counties with greater than 100 percent registration, impossibly high.

53. According to the U.S. Census Bureau, only 69.1% of the citizen voting-age population was registered nationwide in the November 2022 election.

54. Similarly, only 72.7% of the citizen voting-age population was registered nationwide in the November 2020 election.

55. The U.S. Census Bureau further reported that Nevada's statewide voter registration rates for the 2022 and 2020 elections were 65.1% and 66.2% of the citizen voting-age population, respectively.

56. Thus, these five counties are significant outliers, touting voter registration rates 18 to 44 percentage points higher than the national figures from 2022 and 2020, and 25 to 48 percentage points above the State figures for the same period. Discrepancies on this scale cannot be attributed to above-average voter participation and instead point to deficient list maintenance.

57. There is no evidence that these counties experienced above-average voter participation compared to the rest of the country or State. The only explanation for these discrepancies is substandard list maintenance.

58. "[S]ignificantly high registration rates" such as these "give rise to the inference" that election officials are "not properly implementing a program to maintain an accurate and current voter registration roll, in violation of the NVRA." *Am. C.R. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 791 (W.D. Tex. 2015).

59. Nevada's maintenance efforts are especially deficient when it comes to removing voters who have changed residence. *See* 52 U.S.C. §20507(d)(1).

60. In 2023, the U.S. Election Assistance Commission published its biannual report covering the registration period between the 2020 and 2022 general elections. *See* U.S. Election Assistance Comm'n, *Election Administration and Voting Survey 2022 Comprehensive Report* (June 2023), https://perma.cc/28SQ-T24L.

61. Among other things, the EAC's survey requests data concerning the number of registrations removed for voters' failure to respond to an address confirmation notice.

62. The most recent census data shows that more than 15% of Nevada's residents were not living in the same house as a year ago.

63. In response to the EAC's survey for the 2020-2022 period, Mineral County and Esmeralda County reported removing less than 2% of their registration lists for residency changes during that period. That is, registrations removed because the voter moved away or failed to respond to an address confirmation notice represented just 2% of the total number of registrants in those counties. And those removals are spread out over a two-year period, which means that these counties removed on average less than

12

Complaint for Declaratory and Injunctive Relief

1% of their registration lists per year for residency changes. Larger counties such as Washoe experienced high relocation rates (16%) but relatively low removal rates (2%).

64. In fact, Esmeralda, Lincoln, Mineral, and Storey Counties removed *no voters* for failing to respond to an address-confirmation notice and then not vote over two election cycles, and Elko and Pershing Counties removed only two voters for that reason. Those numbers are implausibly low.

65. In addition, several Nevada counties have inordinately high inactive registration rates, indicating that Defendants do not make a reasonable effort to remove outdated registrations.

66. The EAC report indicates that in 2022 Nevada reported 359,403 inactive registrations, representing 16.3% of the total registrations. The number is well above the national average of 11.1%.

67. Over 5,000 inactive registrations currently on the rolls were listed as inactive in the June 10, 2019 voter file, which means they should have been removed after the 2022 election.

68. In addition, several Nevada counties currently have inactive registration rates of 17% or greater, well above the state and national averages. Those counties are Elko (31%), Eureka (23%), Humboldt (26%), Lincoln (25%), Mineral (30%), Nye (31%), Washoe (17%), and White Pine (23%).

69. Having a high percentage of inactive registrations is an indication that a state or jurisdiction is not removing inactive registrations after two general federal elections.

70. Nevada's impossibly high registration rates, large rates of inactive registered voters, low numbers of removals, and inconsistent enforcement across counties indicate an ongoing, systemic problem with its voter-list maintenance efforts.

71. Defendants' failure to maintain accurate voter rolls violates federal law and jeopardizes the integrity of the State's upcoming elections.

72. Similarly bloated voter rolls in other States have led to litigation that exposes these NVRA violations.

73. For example, the United States sued Indiana for violating the NVRA in 2006, noting in its complaint that "25 counties had registration totals of 90-95%" of their voting-age population. Indiana quickly confessed to violating the NVRA in a consent decree.

74. Private organizations sued Indiana in 2012, explaining that "26 counties … have voter registration rolls that contain between 90% and 100% of TVAP." The court denied the defendants' motion to dismiss, and Indiana agreed to conduct a significant, statewide process to clean up its voter rolls.

75. Ohio was sued on the same grounds, and it ultimately agreed to implement heightened review of the accuracy of its voter rolls.

76. In December 2019, another organization sued Detroit under the NVRA, alleging that "Detroit has more registered voters than adult citizens of voting age (106%)." The suit was dismissed on June 29, 2020, because Detroit removed substantial numbers of invalid registrations.

77. In June 2020, a voter sued Michigan's Secretary of State and Direct of Elections for violating the NVRA. The complaint alleged that one county had more registered voters than adult citizens over the age of 18, and an additional 15 counties

14
Complaint for Declaratory and Injunctive Relief

had voter registration rates that exceeded 90 percent of adult citizens over the age of 18. The court denied the defendants' motion to dismiss, and Michigan agreed to slate 177,000 erroneous registrations for cancellation and implement other list-maintenance reforms.

78. In September 2021, voters sued North Carolina, alleging that "40 counties in North Carolina have registration rates that far eclipse the national and statewide voter-registration rate in recent elections." The district court denied the defendants' motion to dismiss, and the case is now in discovery.

### IV. Plaintiffs provided Defendants notice of their statutory violations.

79. Under the NVRA, "Plaintiffs have [statutory] standing assuming they provided proper notice within the meaning of 52 U.S.C. §20510(b)(1)." *Bellitto v. Snipes*, 221 F. Supp. 3d 1354, 1362 (S.D. Fla. 2016).

80. On December 4, 2023, Plaintiffs mailed a statutory notice letter to Secretary of State Francisco Aguilar, notifying him of these NVRA violations and formally requesting that he correct the violations within 90 days. *See* Exh. A.

81. Plaintiffs have since received updated comparisons based on recently available data. Those numbers are reflected in the allegations above.

82. The notice stated that Plaintiffs "hope[d] to avoid litigation and would welcome immediate efforts by your office to bring Nevada into compliance with Section 8."

83. Plaintiffs asked that Defendants ensure they have a "comprehensive, nondiscriminatory" list maintenance program in place that complies with federal law, and to "identify and remove" several categories of ineligible individuals "from the official lists of eligible voters."

15
Complaint for Declaratory and Injunctive Relief

84. Plaintiffs also asked that Defendants "respond in writing within 45 days of the date of this letter," "fully describ[ing] the efforts, policies, and programs [they] are taking, or plan to undertake before the 2024 general election to bring Nevada into compliance with Section 8," as well as when they "plan to begin and complete each specified measure and the results of any programs or activities [they] have already undertaken."

85. Additionally, Plaintiffs asked Defendants to state "what policies are presently in place, or will be put in place, to ensure effective and routine coordination of list maintenance activities," and "a description of the specific steps [Defendants] intend to take to ensure routine and effective list maintenance on a continuing basis beyond the 2024 election."

86. Finally, Plaintiffs requested that Defendants take steps to preserve documents as required by section 8(i) of the NVRA, 52 U.S.C. §20507(i)(1)-(2), and other federal law. *See, e.g.*, *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 963 (S.D. Tex. 2010) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.").

87. The notice letter stated that Plaintiffs would file a lawsuit under 52 U.S.C. §20510(b)(2) if the identified violations were not corrected within 90 days of receipt of the letter.

88. Defendants have failed to correct the violations of the NVRA identified in the notice letter and this complaint.

89. Plaintiff Scott Johnston and all individual members of the RNC and NVGOP who are lawfully registered to vote in Nevada have rights under both the U.S.

Constitution and the Nevada Constitution to vote in federal and state elections, as well as statutory rights under both federal and state law to the safeguards and protections set forth in the NVRA.

90. Defendants' failure to comply with their NVRA voter-list maintenance obligations burdens the right to vote of Mr. Johnston and the individual members of the RNC and NVGOP who are lawfully registered to vote in Nevada by undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be nullified or diluted by unlawful votes.

91. Defendants' failure to satisfy their list-maintenance obligations also infringes the federal and state statutory rights of Mr. Johnston and the individual members of the RNC and NVGOP who are lawfully registered to vote in Nevada. These individuals have a statutory right to vote in elections for federal office that comply with the procedures and protections required by the NVRA.

92. Defendants' NVRA violations have also caused economic, financial, and political injury to the Plaintiffs. Defendants' inaccurate voter rolls have forced Plaintiffs to allocate additional resources and misallocate their scarce resources in ways they otherwise would not have.

## COUNT
**Violation of the NVRA**

93. Plaintiffs incorporate all their prior allegations.

94. Defendants have failed to make reasonable efforts to conduct voter-list maintenance as required by 52 U.S.C. §20507(a)(4).

17
Complaint for Declaratory and Injunctive Relief

95. Plaintiffs have suffered irreparable injuries as a direct result of Defendants' violation of section 8 of the NVRA.

96. Plaintiffs will continue to be injured by Defendants' violations of the NVRA until Defendants are enjoined from violating the law.

97. Plaintiffs have no adequate remedy at law.

**WHEREFORE,** Plaintiffs ask this Court to enter judgment in their favor and provide the following relief:

A. A declaratory judgment that Defendants are in violation of section 8 of the NVRA;

B. A permanent injunction barring Defendants from violating section 8 of the NVRA;

C. An order instructing Defendants to develop and implement reasonable and effective registration list-maintenance programs to cure their failure to comply with section 8 of the NVRA and to ensure that ineligible registrants are not on the voter rolls;

D. Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees; and

E. All other further relief that Plaintiffs may be entitled to.

Dated: March 18, 2024

Respectfully submitted,

Thomas R. McCarthy*
   VA Bar No. 47145
Gilbert C. Dickey*
   VA Bar No. 98858
Conor D. Woodfin*
   VA Bar No. 98937
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

*/s/ Jeffrey F. Barr*

Jeffrey F. Barr
   NV Bar No. 7269
ASHCRAFT & BARR LLP
8275 South Eastern Avenue
Suite 200
Las Vegas, NV 89123
(702) 631-4755
barrj@ashcraftbarr.com

**pro hac vice application forthcoming*

*Counsel for Plaintiffs*

Sigal Chattah
   NV Bar No. 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #204
Las Vegas, NV 89118
(702) 360-6200
sigal@thegoodlawyerlv.com

*Counsel for the Nevada Republican Party*

Complaint for Declaratory and Injunctive Relief