Jeffrey F. Barr (NV Bar No. 7269)
8275 South Eastern Avenue, Suite 200
Las Vegas, NV 89123
(702) 631-4755
barrj@ashcraftbarr.com

Thomas R. McCarthy* (VA Bar No. 47145)
Gilbert C. Dickey* (VA Bar No. 98858)
Conor D. Woodfin* (VA Bar No. 98937)
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

Sigal Chattah (NV Bar No. 8264)
5875 S. Rainbow Blvd #204
Las Vegas, NV 89118
(702) 360-6200
sigal@thegoodlawyerlv.com

*Pro hac vice application pending

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, NEVADA REPUBLICAN PARTY, and SCOTT JOHNSTON,<br><br>Plaintiffs,<br><br>v.<br><br>FRANCISCO AGUILAR, *in his official capacity as Nevada Secretary of State*; LORENA PORTILLO, *in her official capacity as the Registrar of Voters for Clark County*; WILLIAM "SCOTT" HOEN, AMY BURGANS, STACI LINDBERG, and JIM HINDLE, *in their official capacities as County Clerks*,<br><br>Defendants. | No. 2:24-cv-00518-CDS-MDC<br><br>**RESPONSE IN OPPOSITION TO MOTION TO INTERVENE** |

# **INTRODUCTION**

The proposed intervenors have no right to help the State litigate this case. Plaintiffs allege that Nevada is falling short of its federally mandated duty to maintain accurate voter rolls. This case will turn on what procedures Nevada uses to remove ineligible voters, whether those procedures are sufficient, and whether those procedures are consistently followed. The proposed intervenors' concerns lie elsewhere.

To start, they have not shown a legally protectable interest in this matter. Their concern is that if Plaintiffs prove that Nevada is violating the NVRA, then the *remedy* for that violation might illegally sweep in eligible voters. But that interest is premature and hypothetical—nothing about this case, Plaintiffs' requested relief, or enforcement of the NVRA will result in eligible voters being improperly removed from the rolls. In any event, those interests are adequately represented by the state defendants. And the proposed intervenors have no evidence that the State's representation will be deficient or that the defendants will otherwise fail to litigate this case effectively.

Intervention will also impose substantial costs on the parties while providing no benefit to the Court. Adding three new parties will encumber scheduling, increase the costs of litigation, and slow down proceedings. In the midst of election season, those setbacks are substantial. And the proposed intervenors will bring nothing new to the table—they have identified no arguments or positions they would take that the State would be unwilling to press. Their participation is at best superfluous. More likely, it will increase burdens on the parties and the Court.

For these reasons, federal courts routinely deny intervention to parties attempting to help the State litigate NVRA cases. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, No. 1:21-cv-929, 2022 WL 21295936, at *10-13 (W.D. Mich. Aug. 25, 2022); *Green v. Bell*, No.

3:21-cv-493, 2023 WL 2572210, at *6-7 (W.D.N.C. Mar. 20, 2023); *Jud. Watch, Inc. v. Griswold*, No. 1:20-cv-2992, 2021 WL 4272719, at *5 (D. Colo. Sept. 20, 2021); *Common Cause Ind. v. Lawson*, No. 1:17-cv-3936, 2018 WL 1070472, at *6 (S.D. Ind. Feb. 27, 2018); *Jud. Watch, Inc. v. King*, No. 1:12-cv-800, 2013 WL 12290842, at *2 (S.D. Ind. Mar. 20, 2013); *United States v. Florida*, No. 4:12-cv-285, 2012 WL 13034013, at *3 (N.D. Fla. Nov. 6, 2012); *Arcia v. Detzner*, No. 1:12-cv-22282, 2012 WL 12844562, at *3 (S.D. Fla. Sept. 28, 2012). The proposed intervenors here have no better showing, and the Court should deny the motion.

## ARGUMENT

**I.   The proposed intervenors do not have a right to intervene in this case.**

To intervene as of right under Rule 24(a)(2), the proposed intervenors must file a timely motion that shows: (1) they have a significantly protectable interest in this case; (2) disposition of this case may impair their ability to protect that interest; and (3) their interest is not adequately represented by existing parties to the litigation. *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). They "bear[] the burden of showing that *all* the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "Failure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry*, 587 F.3d at 950.

**A.   The proposed intervenors do not have legally protectable interests at stake in this case.**

To satisfy the interest requirement of Rule 24, the proposed intervenors must show that they have an interest relating to this case. An interest is related to the case if "the resolution of the plaintiff's claims actually will affect" the intervenors. *S. Cal. Edison*

3

Opposition to Motion to Intervene

*Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (citation omitted). The interest must be "legally protected" and "significant," and it cannot be "undifferentiated" or "generalized." *Alisal Water*, 370 F.3d at 920. The proposed intervenors have not satisfied these requirements. All their purported interests are either irrelevant to the claims in this case or are far too speculative to support intervention.

Most of the proposed intervenors' interests have nothing to do with election administration, let alone Nevada's voter rolls. Rise's mission, for example, is "fighting for free public higher education and ending homelessness, housing insecurity, and food insecurity among college students." Doc. 7 at 4. Its priorities are "gun safety issues" and "student debt relief." Doc. 7 at 5. The Alliance for Retired Americans, meanwhile, works to "ensure the social and economic justice" of retirees. Doc. 7 at 7. But this case is about Nevada's compliance with the NVRA, not guns, homelessness, or student debt. None of those interests are "related to the underlying subject matter of the litigation." *Alisal Water*, 370 F.3d at 920.

The proposed intervenors' purported interests in registering voters are at least election-related, but this case doesn't concern those interests either. Institute for a Progressive Nevada, for example, claims an interest in providing "instructions on how to register and how to vote in Nevada." Doc. 7 at 6. But Plaintiffs' complaint alleges that the State is failing to *remove* ineligible voters from registration lists. It has nothing to do with registering voters or the process of voting. Regardless of the outcome of this case, the proposed intervenors can continue their efforts to help as many voters register and vote as they are able.

The only interest arguably related to this case is the proposed intervenors' purported interest in preventing the State from removing people from the voter rolls.

Needless to say, the proposed intervenors don't have a "legally protected" interest in keeping ineligible voters on the rolls. *Alisal Water*, 370 F.3d at 920. And the intervenors don't claim such an interest. Instead, they argue that the NVRA gives them a right to challenge the improper removal of eligible voters. *See* Doc. 7 at 12. But Plaintiffs' lawsuit does not ask the State to remove eligible voters who are properly included on the registration lists. Affording complete relief to Plaintiffs in this case would not "actually … affect" the proposed intervenors' interest in ensuring those eligible voters remain registered. *S. California Edison*, 307 F.3d at 803 (citation omitted). Even if the intervenors have an abstract interest in keeping eligible voters registered, their interests in *this case* are based on nothing but speculation that those voters would be improperly removed.

To the extent the proposed intervenors have a right to challenge the improper removal of voters, they can litigate that right once it is "aggrieved by a violation of [the NVRA]." 52 U.S.C. §20510. In other words, their interest in challenging the improper removal of eligible voters is contingent on several events that have not yet occurred, including a determination that Nevada violated federal law (after motions practice, discovery, and potentially a trial); a determination that the violations require Nevada to adopt new procedures (rather than following existing procedures); and a proposed remedy that would require Nevada to adopt unlawful, overbroad list-maintenance procedures. Those highly speculative events "fall[] far short of the 'direct, non-contingent, substantial and legally protectable' interest required for intervention as a matter of right." *S. California Edison*, 307 F.3d at 803 (quoting *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981)).

The proposed intervenors suggest that they might "lack sufficient time" to file their own lawsuit. Doc. 7 at 12 n.4. But the NVRA's generous time provisions nullify

those concerns. *See* 52 U.S.C. §20510(b)(3) ("If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice … before bringing a civil action…."). That the proposed intervenors haven't pointed to a violation, haven't sent the NVRA-required notice letter, and haven't filed a lawsuit are just concessions that whatever concerns they have are not ripe.

Indeed, for these very reasons another district court denied intervention to voter-registration groups intervening in an NVRA case in Michigan. The court ruled that interests that "turn on some amount of increased risk of future disenfranchisement," do not "constitute a substantial legal interest." *Pub. Int. Legal Found.*, 2022 WL 21295936, at *11.

Finally, that the proposed intervenors spend money pursuing their interests does not make those interests any more relevant. An "economic interest" must be "non-speculative," "concrete," and "related to the underlying subject matter of the action." *Alisal Water*, 370 F.3d at 919. Because all of the proposed intervenors' underlying interests are either irrelevant or speculative, whatever money they spend in pursuit of those interests is likewise insufficient to support intervention. *See Pub. Int. Legal Found.*, 2022 WL 21295936, at *10 (ruling that an organization's resource diversion failed to satisfy even the Sixth Circuit's "expansive notion of the interest sufficient to invoke intervention of right"). And "[w]here no protectable interest is present, there can be no impairment of the ability to protect it." *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 252 (D.N.M. 2008); *see also Sierra Club v. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993) (holding that the "third element of intervention as of right, impairment," generally "follows from" the second element).

In short, this case is about whether the State is maintaining its voter registration records in compliance with federal law. It has nothing to do with the ancillary efforts of third-party organizations to register voters, regardless of how much money they spend on those efforts.

### B. The proposed intervenors have not made a "very compelling showing" that the State's representation will be inadequate.

On the final element for intervention as of right, the proposed intervenors begin by misstating the applicable standard. Ordinarily, "the requirement of inadequacy of representation" requires only a "minimal" showing that the "representation of [the intervenors'] interests 'may be' inadequate." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). But "[w]here the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry*, 587 F.3d at 951 (citations omitted). There's also a separate "assumption of adequacy when the government is acting on behalf of a constituency that it represents," which must be rebutted with a "*very* compelling showing." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (emphasis added). The proposed intervenors have not made a "very compelling showing" that the State's representation will be inadequate.

The proposed intervenors have not shown that they share a different ultimate objective from the State defendants. In fact, they concede this point by recognizing that the defendants "may oppose relief." Doc. 7 at 15. The proposed intervenors quibble that some of their interests might not align perfectly with the State's, but they undoubtedly share the same *ultimate* objective: dismissal of the suit. *See Arizonans for Fair*

7

Opposition to Motion to Intervene

*Elections v. Hobbs*, 335 F.R.D. 269, 275 (D. Ariz. 2020) (intervenors shared the same "ultimate objective" as the State when both were "defending the constitutionality" of state laws); *Perry*, 587 F.3d at 951 (same). The defendants have not yet appeared, but the Secretary has publicly announced that he opposes Plaintiffs' requested relief and "will be filing a motion to dismiss" the complaint. Nev. Sec'y of State, *Nevada Secretary of State Issues Statement on Lawsuit Filed by the Republican National Committee, Nevada Republican Party* (Mar. 29, 2024), https://perma.cc/UV9H-L7P4. The defendants and proposed intervenors thus share the same ultimate objective.

The proposed intervenors fall far short of a "very compelling showing" that the State's representation will be inadequate. After all, the State *represents* the interests of voters. The Secretary is "the Chief Officer of Elections" for Nevada and "is responsible for the execution and enforcement" of list maintenance in compliance with the NVRA. Nev. Rev. Stat. §293.124. "While the Proposed Intervenors also claim an interest in ensuring such compliance, there is no reason to conclude that [the Secretary] … is unable to litigate this case in a way that protects that interest." *Green*, 2023 WL 2572210, at *6. The intervenors argue that the NVRA's "twin objectives" compromise the State's representation, but the argument proves too much: the NVRA tasks the State with "easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter rolls." *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019). That is, Congress has charged the State with representing the very interests that intervenors claim in this case. The intervenors may prefer that the State ignore its duty to "protect[] electoral integrity," but the fact that the State is charged with that duty is hardly evidence that the State's representation of eligible voters will be inadequate.

8
Opposition to Motion to Intervene

1    Moreover, the proposed intervenors have no evidence from this case that the
2    State will inadequately represent their interests. They claim that other state officials in
3    other cases "sometimes try to resolve suits like this one through settlement." Doc. 7 at
4    16. But that is not evidence that *these* state officials will resolve *this* case through
5    settlement. Indeed, all the evidence so far is to the contrary—the Secretary is adamantly
6    opposed to Plaintiffs' relief. The proposed intervenors also claim that "partisan or
7    private actors" often have interests that diverge from the government. But the partisan
8    interests of the proposed intervenors and Democratic Secretary of State are aligned in
9    this case. Even if they weren't, the "Proposed Intervenors must do more than allege—
10   and superficially at that—partisan bias to meet it." *Miracle v. Hobbs*, 333 F.R.D. 151, 156
11   (D. Ariz. 2019). "Proposed Intervenors demonstrate no such deficiencies in the present
12   case; indeed, they cannot," because the Secretary will defend this case and adequately
13   represent the intervenors' interests. *Id.* at 155.

14   The cases finding inadequate representation only prove that the proposed
15   intervenors come up short here. Courts have recognized a compelling showing of
16   inadequate representation when the State "fail[s] to appeal the court's judgment," and
17   "intervention [is] vital to the defense of the law at issue." *Id.* (citing *Horne v. Flores*, 557
18   U.S. 433, 443 (2009)). Similarly, when the government "seeks to overturn on appeal the
19   very court decision" that protects the intervenors' interests, intervenors can show
20   inadequate representation. *Citizens for Balanced Use*, 647 F.3d at 899. The state defendants
21   are not employing such tactics here. The two "election cases" the intervenors cite are
22   even further afield. One relied on the fact that the State's brief "reveal[ed] divergent
23   arguments" compared to the Democratic Party intervenors' brief, which is itself
24   questionable application of Ninth Circuit precedent. *Paher v. Cegavske*, No. 3:20-cv-243,

9

Opposition to Motion to Intervene

2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020). In the other election case, intervention was unopposed, and the court granted the motion "[w]ithout opining on the merits" of the intervention itself. *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-cv-1445, 2020 WL 5229116, at *1 (D. Nev. Aug. 21, 2020).

Unsurprisingly, courts have denied intervention for these same reasons in other NVRA cases. *See Pub. Int. Legal Found.*, 2022 WL 21295936, at *11 ("While the positions of the Proposed Intervenors and Secretary Benson may not identically align, their interests are sufficiently overlapping such that there is no substantial doubt that their concerns about disenfranchisement are already being adequately represented by Michigan's Secretary of State."); *Green*, 2023 WL 2572210, at *6 (ruling that the proposed intervenors failed to carry even "their 'minimal' burden of showing representational inadequacy"). In the end, the proposed intervenors claim nothing but "potential conflict" and interests that are not "identical." Doc. 7 at 16. Those unsupported claims do not make a "very compelling showing" that the State defendants' representation is inadequate. *Arakaki*, 324 F.3d at 1086.

## II. The court should deny permissive intervention.

To obtain permissive intervention under Rule 24(b), Movants must file a timely motion that shows: (1) independent grounds for jurisdiction; and (2) that their claims share a question of law or fact with the main action. *S. Cal. Edison*, 307 F.3d at 803-04. Even if those elements are satisfied, "the district court retains discretion to deny permissive intervention." *Id.* In exercising that discretion, the court "must consider whether intervention will unduly delay or prejudice the original parties and should consider whether the applicant's interests are adequately represented by the existing parties and whether judicial economy favors intervention." *Miracle*, 333 F.R.D. at 156.

10

Opposition to Motion to Intervene

The proposed intervenors haven't even tried to show that this Court would have an independent basis for jurisdiction, and permissive intervention should be denied on that ground alone. As explained above, the intervenors' fear that eligible voters will be erroneously removed from the rolls is too speculative to form an independent basis for jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Even if Plaintiffs prevail, the proposed intervenors have not shown it "likely" that the State would wrongfully remove eligible voters from the rolls. *Id.* Regardless of whether the proposed intervenors' interests in protecting voters satisfy the Rule 24(a) interest requirement, they fall short of the Article III requirements to provide the court an independent basis for jurisdiction.

Even if the proposed intervenors met the jurisdictional requirement, other considerations weigh against permissive intervention. First, the State defendants adequately represent the proposed intervenors' interests. This is an independent reason to deny permissive intervention. The "[i]ntervenors' interests are aligned with those of Defendant[s]," who are "well-suited to defend" the claims in this case. *Id.* at 156 (denying permissive intervention based on adequate representation); *see also United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (denying permissive intervention to taxpayers where the governor adequately represented their interests). The existing parties are "capable of developing a complete factual record," *Perry*, 587 F.3d at 955-56, and the proposed intervenors' "participation is unnecessary to the full development of this case," *Arizonans for Fair Elections*, 335 F.R.D. at 276. As in other election cases, the "[i]ntervenors' interests align with the State's," and they have not shown that they "can more adequately defend state laws than the State itself." *Id.*

11

Opposition to Motion to Intervene

Second, the proposed intervenors' participation will delay proceedings and prejudice the parties. Because "[i]ntervening parties are entitled to all the rights and responsibilities of original parties to litigation," adding the intervenors will increase the costs of litigation, make scheduling more cumbersome, and inevitably slow down proceedings. *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 259; *see also Perry*, 587 F.3d at 955-56 (upholding the district court's determination that intervention "might very well delay the proceedings, as each group would need to conduct discovery on substantially similar issues," which "in all probability would consume additional time and resources of both the Court and the parties"). Even minor delays are especially problematic in "time sensitive" election cases such as this one, where "the general election is fast approaching." *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 259. Courts have thus denied permissive intervention in NVRA cases, recognizing that "[a]dding three more defendants, even if they submit joint filings, realistically portends more discovery and more motions, and therefore more time and resources expended before a resolution of the important issues in this case can be rendered." *Pub. Int. Legal Found.*, 2022 WL 21295936, at *12; *see also Green*, 2023 WL 2572210, at *7 (denying permissive intervention because the intervenors' "participation would needlessly complicate this litigation, consuming additional resources of the court and the parties, without any corresponding benefit" (cleaned up)). Because "timely resolution is critical to the integrity of the election process, both its perceived and actual integrity," the Court should deny permissive intervention. *Pub. Int. Legal Found.*, 2022 WL 21295936, at *12.

Third, the proposed intervenors have not pointed to any unique arguments or positions they would take up that the State defendants will not. They have provided the Court with no reasons to believe their participation would help the Court resolve the

12

Opposition to Motion to Intervene

issues in this case. Any doubt on that score weighs in favor of permitting them to participate as amici, not as parties. *See Miracle*, 333 F.R.D. at 156-57 ("Although the Court will not allow intervention, the Court grants Proposed Intervenors leave to file an amicus brief….").

## CONCLUSION

For the foregoing reasons, the court should deny the motion to intervene.

Dated: April 4, 2024                                  Respectfully submitted,

                                                                   */s/ Jeffrey F. Barr*

Thomas R. McCarthy*                              Jeffrey F. Barr
  VA Bar No. 47145                                     NV Bar No. 7269
Gilbert C. Dickey*                                   ASHCRAFT & BARR LLP
  VA Bar No. 98858                                   8275 South Eastern Avenue
Conor D. Woodfin*                                  Suite 200
  VA Bar No. 98937                                   Las Vegas, NV 89123
CONSOVOY MCCARTHY PLLC                  (702) 631-4755
1600 Wilson Boulevard, Suite 700            barrj@ashcraftbarr.com
Arlington, VA 22209
(703) 243-9423                                          *Counsel for the Republican National Committee and Scott Johnston*
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com              */s/ Sigal Chattah*

*pro hac vice application pending                Sigal Chattah
                                                                   NV Bar No. 8264
*Counsel for Plaintiffs*                             CHATTAH LAW GROUP
                                                                5875 S. Rainbow Blvd #204
                                                                Las Vegas, NV 89118
                                                                (702) 360-6200
                                                                sigal@thegoodlawyerlv.com

                                                                *Counsel for the Nevada Republican Party*

13

Opposition to Motion to Intervene