David R. Fox (NV Bar No. 16536)
Christopher D. Dodge (*pro hac vice*)
Marisa A. O'Gara (*pro hac vice*)
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
cdodge@elias.law
mogara@elias.law

Bradley S. Schrager (NV Bar No. 10217)
Daniel Bravo (NV Bar No. 13078)
**Bravo Schrager LLP**
6675 South Tenaya Way, Suite 200
Las Vegas, NV 89113
(702) 996-1724
bradley@bravoschrager.com
daniel@bravoschrager.com

*Attorneys for Intervenor-Defendants
Rise Action Fund, Institute for a Progressive Nevada,
and Nevada Alliance for Retired Americans*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, NEVADA REPUBLICAN PARTY, and SCOTT JOHNSTON,<br><br>Plaintiffs,<br><br>v.<br><br>FRANCISCO AGUILAR, in his official capacity as Nevada Secretary of State; LORENA PORTILLO, in her official capacity as the Registrar of Voters for Clark County; WILLIAM "SCOTT" HOEN, AMY BURGANS, STACI LINDBERG, and JIM HINDLE, in their official capacities as County Clerks,<br><br>Defendants. | Case No. 2:24-cv-00518-CDS-MDC<br><br>**REPLY IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS** |

## INTRODUCTION

Proposed Intervenors Rise Action Fund ("RISE"), Institute for Progressive Nevada ("IPN"), and Nevada Alliance for Retired Americans ("Alliance") satisfy the requirements for intervention as of right under Rule 24(a). Each Proposed Intervenor has a significant stake in this case. They are committed to enfranchising their members, constituents, and Nevadans generally, and to that end they undertake significant efforts to register voters and to ensure they can cast ballots. Plaintiffs do not meaningfully dispute these interests, but instead insist that the relief they seek—an extraordinary and last-minute purge of the voter rolls on the cusp of a presidential election—will not impact Proposed Intervenors because Plaintiffs supposedly seek only the removal of *ineligible* voters. That ignores reality. Voter purges, and particularly rushed purges, often remove eligible voters from the rolls, even if inadvertently. That is, in part, why Congress passed the National Voter Registration Act ("NVRA") to restrict when and how states may purge voters. If Plaintiffs succeed in their effort to prompt a rushed voter purge based on threadbare allegations that the NVRA has been violated, eligible voters are very likely to be removed, imperiling Proposed Intervenors' missions and requiring them to abandon other mission-critical activities in an election year to refocus on staunching the effect of Plaintiffs' demanded purge.

The other requirements for intervention are also met. Proposed Intervenors moved to intervene mere days after Plaintiffs filed suit, and their motion will be fully briefed even before the named Defendants appear to defend it. And the named Defendants—Nevada state and county election officials—do not adequately represent Proposed Intervenors' interests. Defendants are required to balance the NVRA's competing goals of expanding access to voting while maintaining accurate voter rolls, while Proposed Intervenors' sole focus is on protecting their members' and constituents' voting rights. Proposed Intervenors therefore do not have "interests . . . identical to those of an existing party," so their burden to show inadequate representation is "minimal." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citation omitted)).

The Court should therefore grant Proposed Intervenors' motion.

# ARGUMENT

## I. Proposed Intervenors are entitled to intervene as a matter of right.

### A. Proposed Intervenors have significant protectable interests that may be impaired absent intervention.

Registering Nevadans to vote—and ensuring that they remain registered and are able to cast ballots that are counted—is at the core of Proposed Intervenors' missions. *See* Solomon Decl. ¶ 11; Swartz Decl. ¶ 4; Bird Decl. ¶ 4. Each Proposed Intervenor engages in substantial efforts to educate voters about the registration process; to register its own members and members of the public; and would need to undertake significant remedial work to protect their members and communities if Plaintiffs prevail in their demand for a voter purge on the cusp of a major election. Plaintiffs' suit threatens to injure Proposed Intervenors' missions; to disrupt their election year organizing plans; and drain precious financial and human resources. *See* Solomon Decl. ¶¶ 11–15; Swartz Decl. ¶¶ 4–5; Bird Decl. ¶¶ 4–10. Plaintiffs dispute none of this.

Unable to dispute Proposed Intervenors' clear stake in this suit, Plaintiffs first suggest that "[m]ost of the proposed intervenors' interests have nothing to do with election administration." Resp. in Opp'n to Mot. to Intervene at 4, ECF No. 18 ("Resp."). But Rule 24(a) requires an intervenor have "an interest" in a case; it says nothing about whether that must be an intervenor's sole interest or one among several. *See* Fed. R. Civ. P. 24(a). Moreover, Proposed Intervenors' ability to promote their other interests—enacting responsible firearm regulation; seeking student debt relief; and advocating for Social Security and Medicare—all derive from their ability to register supporters to vote and to marshal them at the ballot box. As Mr. Solomon explains, RISE "cannot successfully realize [its] mission as an organization if [its] student constituents are not able to successfully cast a ballot and make their voices heard." Solomon Decl. ¶ 15; *see also* Bird Decl. ¶¶ 9–10 (explaining similar impacts on the Alliance). That Proposed Intervenors have additional political goals and interests impacted by the ability to register voters only heightens their interest here. *See Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (proposed intervenors with diverse interests "maintain significant protectable interests which would be impaired" by challenge to Nevada election practices).

Plaintiffs ultimately acknowledge that Proposed Intervenors do, in fact, have an "election-related" interest in "preventing the state from removing people from the voter rolls," but suggest that is an irrelevant concern because Plaintiffs seek only to remove "ineligible" voters from the list in accordance with federal law. Resp. at 4–5. This argument wrongly assumes at the intervention stage that Plaintiffs are correct on the merits. It is like saying that a patentholder has no right to intervene in a challenge to his patent's validity because he has no right to an invalid patent, or that a third-party beneficiary has no right to intervene to defend a contract's enforceability because he has no rights under an unenforceable contract. Plaintiffs will *always* say that they seek only relief to which they are lawfully entitled. The entire purpose of intervention is to allow Proposed Intervenors to defend their own interests and present their own arguments, so that the Court can consider all arguments and perspectives in adjudicating the merits.

Plaintiffs insist it is only "speculation," *id*. at 5, that eligible voters will be swept up in any purge. Resp. at 5. But Proposed Intervenors need not show that it is "an absolute certainty that [their] interests will be impaired." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011). Rule 24(a) requires only that the disposition of a case "*may* as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a) (emphasis added). And here, it is entirely foreseeable that the relief Plaintiffs seek will purge eligible voters. As Proposed Intervenors explained, *see* Mot. to Intervene as Defs. at 2, ECF No. 7 ("MTI"), Congress enacted the NVRA to guard against rushed and partisan purges of the voter rolls, which oftentimes sweep in eligible voters, even if unintentionally, *see also Am. C.R. Union v. Philadelphia City Comm'rs*, 872 F.3d 175, 179 (3d Cir. 2017) (explaining the NVRA "protects registered voters from improper removal from the rolls"). It is well-established that "voter purges have often had the effect of clearing eligible voters from state registration lists and in a manner that tends to discriminate by race and nationality." Lydia Hardy, *Voter Suppression Post-Shelby: Impacts and Issues of Voter Purge and Voter Id Laws*, 71 Mercer L. Rev. 857, 866 (2020).[1] That

---

[1] *See also* Gilda Daniels, *Democracy's Destiny*, 109 Cal. L. Rev. 1067, 1088 (2021) ("[V]oter purges can also cause the removal or invalidation of eligible and legal voters from voter registration lists."); Sarah M.L. Bender, *Algorithmic Elections*, 121 Mich. L. Rev. 489, 503 (2022)

risk is acute where states engage in a "maximum effort at purging voting lists," which increases the risk of "remov[ing] eligible voters." *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 801 (E.D. Mich. 2020) (quoting *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019)). Indeed, just a month ago, a county clerk in Michigan errantly purged over 1,000 voters from the rolls, including an active-duty Air Force officer, at the demand of conservative organizations.[2] Plaintiffs seek similar relief here—a rushed and maximalist purge of the voter rolls on the cusp of an election based on threadbare allegations that the NVRA is not being followed.

Plaintiffs also bizarrely argue that Proposed Intervenors should just "file their own lawsuit" if they are ultimately harmed by any relief this Court orders. Resp. at 5. That sort of dueling lawsuit—with a clear risk of inconsistent judgments—is what Rule 24 is supposed to prevent. Far better for the Court to have both perspectives before it in a single case. In any event, relief via such a lawsuit is likely to prove a fantasy for Proposed Intervenors and their members because voters often do not realize they have been purged until shortly before an election—in Nevada, when they do not receive a ballot in the mail. *See* Hardy, *Voter Suppression Post-Shelby*, 71 Mercer L. Rev. at 866-67 (explaining many "eligible voters . . . don't become aware [that they have been purged] until they show up to the polls on election day").

Plaintiffs next suggest that Proposed Intervenors lack a protectable interest in the resources they would need to divert in response to a voter purge in Nevada. *See* Resp. at 6. But that is dead wrong. Proposed Intervenors have explained how such a diversion in response to an unexpected election-year voter purge would impair Proposed Intervenors' other mission-critical and election-related activities. *See* Solomon Decl. ¶¶ 11–15; Swartz Decl. ¶¶ 4–5; Bird Decl. ¶¶ 4–7. Such harm satisfies the "more stringent" hurdle imposed by "Article III standing requirements," and thus

---

(describing instances of voter purges removing eligible voters); Naila S. Awan, *When Names Disappear: State Roll-Maintenance Practices*, 49 U. Mem. L. Rev. 1107, 1108 (2019) (similar); Daniel P. Tokaji, *Voter Registration and Election Reform*, 17 Wm. & Mary Bill Rts. J. 453, 478 (2008) ("An overly aggressive program of removing voters believed to be ineligible threatens to result in erroneous deletion of some who are eligible.").

[2] Alexandra Berzon, *Trump's Allies Ramp Up Campaign Targeting Voter Rolls*, N.Y. Times (Mar. 3, 2024), https://www.nytimes.com/2024/03/03/us/politics/trump-voter-rolls.html; Peg McNichol, *Voter rolls targeted in run-up to November election, highlighted by recent efforts in Waterford*, The Oakland Press (Mar. 18, 2024), https://www.theoaklandpress.com/2024/03/18/voter-rolls-targeted-in-run-up-to-november-election/.

readily meets the more lenient Rule 24(a) standard. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (explaining that satisfying Article III "compels the conclusion that [intervenors] have an adequate interest"); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) (en banc) (holding that "an organization has direct standing . . . where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose"). The same is true of Proposed Intervenors' other interests in this litigation, as courts have long recognized that organizations have standing to protect the voting rights of their members and constituents. *See* MTI at 12 (collecting cases).

Finally, Plaintiffs try to muddy the waters by pointing to instances where courts have denied intervention in NVRA cases but without any meaningful discussion of those decisions or their facts. *E.g.*, Resp. at 1–2, 6. That ignores that intervention is a "contextual, fact-specific inquiry." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011) (rejecting "categorical" approach to intervention). It also ignores that courts often *do* grant intervention in NVRA cases, *e.g.*, *Bellitto v. Snipes*, No. 16-CV-61474-BLOOM/Valle, 2016 WL 5118568, at *3 (S.D. Fla. Sept. 21, 2016) (granting labor union intervention as of right); *Winfrey*, 463 F. Supp. 3d at 799–80 (granting permissive intervention in Section 8 case); Order, *Daunt v. Benson*, 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30 (similar); Order, *Voter Integrity Proj. NC, Inc. v. Wake Cnty. Bd. of Elections*, No. 5:16-cv-683 (E.D.N.C. Dec. 1, 2016), ECF No. 26 (similar).

Even a cursory review of Plaintiffs' cases shows that they are distinguishable. Most involved timeliness concerns that are not present here. For example, in *Arcia v. Detzner*, No. 1:12-cv-22282, 2012 WL 12844562 (S.D. Fla. Sept. 28, 2012), the court's "concern [wa]s one of timeliness," as the intervenors moved three months after the complaint was filed, after "discovery ha[d] closed," and "just days" before a preliminary injunction hearing. *See id.* at *1–3. Similarly, in *Judicial Watch, Inc. v. Griswold*, No. 1:20-cv-02922-PAB-KMT, 2021 WL 4272719 (D. Colo. Sept. 20, 2021), the proposed intervenors moved *after* the court had resolved a motion to dismiss, giving the court concern that "intervention at th[at] stage could cause delay." *Id.* at *5; *see also Green v. Bell*, No. 3:31-cv-00493-RJC-DCK, 2023 WL 2572210, at *6–7 (W.D.N.C. Mar. 20, 2023) (denying intervention motion filed two months after complaint and opposed by both

plaintiffs and the Secretary of State); *Pub. Int. Legal Found. v. Benson*, No. 1:21-CV-929, 2022 WL 21295936, at *1 (W.D. Mich. Aug. 25, 2022) (similarly denying intervention where motion was "arguably untimely" because it was "filed while the parties were already briefing their motion to dismiss" and where state officials opposed intervention). No similar concern exists here.

In other cases, the proposed intervenors asserted only a wholly abstract interest. In *Common Cause Indiana v. Lawson*, No. 1:17-cv-03936-TWP-MPB (S.D. Ind. Feb. 27, 2018), the court denied a conservative "voting integrity" organization's request to intervene because it "does not vote, does not participate in voter registration drives, and does not claim any real, tangible, and particularized effect on itself or its programs and activities." *Id.* at *6. And in *United States v. Florida*, No. 4:12CV285-RH/CAS, 2012 WL 13034013, at *1 (N.D. Fla. Nov. 6, 2012), the court denied intervention to several conservative organizations that relied solely on their fears of vote dilution, explaining that these were "generalized interests" the organizations shared with "every other registered voter in the state." *See Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev 2020) (explaining that generalized claims of vote dilution "do[] not satisfy the requirement that Plaintiffs must state a concrete and particularized injury"). In contrast, Proposed Intervenors have members and constituents who vote and help register voters, *see* Solomon Decl. ¶ 11; Swartz Decl. ¶ 4; Bird Decl. ¶ 4, *and* have explained how Plaintiffs' suit threatens to impair their programs and activities, *see* Solomon Decl. ¶¶ 12-15; Swartz Decl. ¶ 5; Bird Decl. ¶¶ 7-10.

### B. The existing parties do not adequately represent the Proposed Intervenors.

Proposed Intervenors cannot rely upon the existing parties alone to protect their interests. Plaintiffs do not dispute that the named Defendants—Nevada election officials—are bound to adhere to the "twin objectives" of the NVRA, which requires balancing the competing goals of "easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter rolls." Resp. at 8 (quoting *Bellitto*, 935 F.3d at 1198). As several courts have recognized, this obligation to balance competing objectives is enough to show that state officials may not adequately represent the interests of civic organizations like the Proposed Intervenors. *See, e.g.*, *Bellitto*, 2016 WL 5118568, at *2; *Winfrey*, 463 F. Supp.3d at 801; *cf. Kobach v. U.S. Election Assistance Comm'n*, No. 13-CV-4095-EFM-DJW, 2013 WL 6511874, at

*4 (D. Kan. Dec. 12, 2013) (explaining in NVRA litigation "that the existing government Defendants have a duty to represent the public interest, which may diverge from the private interest of Applicants"). The Secretary and county clerks, "as [] elected official[s]," have "interests and interpretation[s] of the NVRA" that are "not [] aligned" with Proposed Intervenors and accordingly their "reasons for seeking dismissal [may be] different" as well. *Bellitto*, 2016 WL 5118568, at *2 (granting intervention as of right in NVRA).

Plaintiffs contend it is enough that the first of the NVRA's objectives tasks election officials with easing barriers to voting. *See* Resp. at 8. But they "simply ignore[] the second—equally weighty—express legislative purpose of the [National Voter Registration] Act." *Winfrey*, 463 F. Supp.3d at 801 (granting intervention in NVRA case). That impacts the adequacy of representation because these two goals naturally "create some tension" with one another, requiring election officials "to balance these competing interests." *Id.* (quoting *Bellitto*, 935 F.3d at 1198). Plaintiffs nowhere account for that balancing. Thus, "while intervenors' principal interest is in ensuring that *all eligible* voters are allowed to vote," the elected officials must balance that interest with "ensuring that *no ineligible* voters are allowed to vote," a concern that is tangential to Proposed Intervenors. *Kasper v. Hayes*, 651 F. Supp. 1311, 1313 (N.D. Ill.), *aff'd sub nom. Kasper v. Bd. of Election Comm'rs*, 810 F.2d 1167 (7th Cir. 1987).

With little to say about Proposed Intervenors' distinct interests, Plaintiffs attempt instead to crank up Proposed Intervenors' burden to an insurmountable degree. They suggest that in place of the ordinary "minimal" standard for meeting this factor, Proposed Intervenors must make a "very compelling showing" because they share the same "ultimate objective" as government defendants. *See* Resp. at 7–8 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). They are wrong at every step.

To start, Plaintiffs simply ignore the Supreme Court's recent decision in *Berger*, 597 U.S. at 195; *see also* MTI at 16–17 (discussing *Berger*). That is no small oversight. The Ninth Circuit has recognized that *Berger* "calls into question whether the application of such an 'ultimate objective'] presumption is appropriate." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022) (declining to apply test and "offer[ing] no opinion as to

whether it remains good law in light of *Berger*"). *Berger* itself explained that it is not appropriate to "presum[e] . . . adequate representation" by a public official absent "identical" interests between the parties, stressing that public officials must "bear in mind broader public-policy implications" than private groups. 597 U.S. at 196 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972)). Accordingly, even where "state agents may pursue 'related' state interests, . . . they cannot be fairly presumed to bear 'identical' ones." *Id.* at 197 (quoting *Trbovich*, 404 U.S. at 538). That is precisely the situation here: The NVRA *mandates* that the named Defendants balance the statute's "twin objectives," while Proposed Intervenors focus their efforts on just one of those objectives—maximizing registration and access to the ballot. MTI at 15-17. Accordingly, there is no dispute that Proposed Intervenors and the named Defendants do not share "identical" interests. *See, e.g.*, *Bellitto*, 2016 WL 5118568, at *2; *Winfrey*, 463 F. Supp.3d at 801. This Court should adhere to *Berger* and find that the named Defendants, who must "bear in mind broader public-policy implications," mandated by Congress, 597 U.S. at 196, may not adequately represent Proposed Intervenors. *See* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1909 (3d ed. 2022) (explaining that in such circumstances "intervention ordinarily should be allowed").

Even setting *Berger* aside, the "ultimate objective[]" test simply does not apply under the facts here. That standard is not, as Plaintiffs suggest, concerned with whether a named defendant and a purported intervenor happen to "occupy the same posture in the litigation." *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)). Even if, for example, the named Defendants and Proposed Intervenors both plan to file Rule 12(b) motions, that does not mean that "the government's representation of the public interest [will] be 'identical to the individual parochial interest' of a particular group." *Id.* (quoting *WildEarth Guardians*, 573 F.3d at 996); *cf. Berger*, 597 U.S. at 197 (explaining that where a proposed intervenor's "'interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." (quoting 7C Wright & Miller, *Fed. Prac. & Proc.* § 1909 (3d ed. 2022))). As the Seventh Circuit explained in a recent election law case, "it is not enough that" named parties and a proposed intervenor "seek

the same outcome in the case" for such a presumption to apply; otherwise "intervention as of right will almost always fail." *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 688–89 (7th Cir. 2023) (explaining presumption applies only when parties share "identical" interests and concluding public officials and partisan actor did not "share the same goal" despite similar litigation position).

Even prior to *Berger*, the Ninth Circuit explained that parties do not share the same "ultimate objective[]" where one seeks the "broadest possible" reading of a statute—such as Proposed Intervenors' reading of the NVRA's protections against removal—while an existing party adopts "narrower [views that] suffice to comply with its statutory mandate," as Defendants must under the NVRA. *Citizens for Balanced Use*, 647 F.3d at 899. Such differing views of a statue "represent[] more than a mere difference in litigation strategy . . . but rather demonstrate[] the fundamentally differing points of view . . . on the litigation as a whole." *Id.* (citing *California ex rel. Lockyer v. United States,* 450 F.3d 436, 444–45 (9th Cir. 2006)). Once more, there is no dispute that Proposed Intervenors satisfy this standard—rather than "balance the[] competing interests" of the NVRA, *Bellitto*, 935 F.3d at 1198, they instead seek only to promote the "parochial interest[s]" of their organizations, *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians*, 573 F.3d at 996).[3] Proposed Intervenors therefore satisfy the "ultimate objective" test, even if it applies and survives *Berger*.

Plaintiffs also fault Proposed Intervenors for not coming forth with "evidence from this case that the State will inadequately represent their interests." Resp. at 9. But it is not Proposed Intervenors' "burden at this stage in the litigation to anticipate" such "specific differences." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 824 (9th Cir. 2001); *see also Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula,* 41 F.4th 767, 774 (6th Cir. 2022) ("In assessing whether a proposed intervenor has fulfilled this [inadequacy of representation]

---

[3] The district court in *Benson*, applied the "same ultimate objective" presumption despite also recognizing that "the positions of the Proposed Intervenors and [the] Secretary [of State] may not identically align." 2022 WL 21295936, at *11. That opinion—issued shortly in the wake of *Berger* and without any discussion of the decision—is in significant tension with the Supreme Court's admonition that such presumptions should only apply "in cases where a movant's interests are identical to those of an existing party." *Berger*, 597 U.S. at 196 (citing 7C Wright & Miller, *Fed. Prac. & Proc.* § 1909 (3d ed. 2022)).

requirement, courts must remember that certainty about future events is not required."). It is sufficient to show a "difference in interests," *Berg*, 268 F.3d at 824, of which there can be no doubt here—under any standard—given the named Defendants' statutory duty to balance the NVRA's twin objectives.[4]

### C. Permitting intervention will not impose any costs or delays.

There is no basis for Plaintiffs' insistence that intervention would impose costs or delays. Proposed Intervenors moved to intervene just *three days* after the complaint was filed. *See* Compl.; MTI. And Proposed Intervenors have made clear that they will adhere to *any* schedule set by the Court or agreed to by the existing parties. They will cause no delay and impose minimal, if any, added costs.

## II. Proposed Intervenors satisfy Rule 24(b)'s requirements for permissive intervention.

Alternatively, permissive intervention is appropriate under Rule 24(b) because Proposed Intervenors' motion is timely and shares common questions of law and fact with the main action. *See* Fed. R. Civ. P. 24(b); *see also* MTI at 17. Plaintiffs do not seriously dispute either of these requirements in their response.

Instead, Plaintiffs primarily argue that Proposed Intervenors have not shown "independent grounds for jurisdiction." *See* Resp. at 10-11. But an independent basis for jurisdiction is "unnecessary where, as here, in a federal question case the proposed intervenor raises no new claims." *Nevada v. United States*, No. 3:18-cv-569-MMD-CBC, 2019 WL 718825, at *2 (D. Nev. Jan. 14, 2019) (citing *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir.

---

[4] For similar reasons, Plaintiffs are wrong to discount the risk Proposed Intervenors face from possible settlement. *See* Resp. at 9. They assume that because the incumbent Secretary of State is "Democratic," his views and Proposed Intervenors' are "aligned in this case." *Id.* But Democratic secretaries of state have previously settled such suits, *see* Stipulation of Dismissal, *Daunt v. Benson*, No. 1:20-cv-00522-RJJ-RSK (W.D. Mich. Feb. 16, 2021), ECF No. 58, and the complaint also names county officials from across the state as Defendants, *see* Compl. at 6, ECF No. 1. The risk that one or more of the named Defendants may settle further illustrates the lack of adequate representation here. *See Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1001 (8th Cir. 1993) ("[I]f the case is disposed of by settlement rather than by litigation, what the state perceives as being in its interest may diverge substantially from the counties' and the landowners' interests.").

2011)). The Ninth Circuit has unambiguously stated that "the independent jurisdictional grounds requirement *does not apply to proposed intervenors in federal-question* cases when the proposed intervenor is not raising new claims." *Geithner*, 644 F.3d at 844 (emphasis added).[5] Here, Proposed Intervenors seek to intervene as defendants and do not raise additional claims or seek any relief—the 'independent jurisdiction' requirement has no application here. *See Tonkawa Tribe of Indians of Okla. v. Sci. Games Corp.*, No. 2:20-cv-01637-GMN-BNW, 2021 WL 3847802, at *3 (D. Nev. Aug. 27, 2021) (citing *Geithner*, 644 F.3d at 844) (explaining requirement did not apply where "Plaintiffs filed suit in federal court based on federal question jurisdiction" and "Intervenor does not seek intervention to raise new claims"). And even if Proposed Intervenors did need to establish standing, their interests in protecting their members' voting rights, safeguarding their missions, and avoiding a burdensome diversion of resources suffice. *See supra* I(A).

Plaintiffs' remaining arguments are limited, duplicative, and largely irrelevant. *First*, they contend Proposed Intervenors' interests are aligned with the State, Resp. at 11, but ignore that "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Wright & Miller, *Fed. Prac. & Proc.* § 1909 (3d ed. 2022). And, as discussed above, Proposed Intervenors have meaningfully distinct interests from the named Defendants. *See supra* I(B). *Second*, they again assert without any basis that Proposed Intervenors will delay the proceedings, an assertion entirely at odds with the record thus far. *See supra* I(C); MTI at 9–10 (discussing timeliness). *Finally*, they claim Proposed Intervenors are not likely to raise distinct arguments from the named Defendants but cite no authority for the proposition that this is relevant to permissive intervention. *See* Resp. at 12–13. In any event,

---

[5] As the Ninth Circuit has explained, that requirement exists only in diversity cases due to concern that adding new parties through "intervention might be used to enlarge inappropriately the jurisdiction of the district courts . . . where proposed intervenors seek to use permissive intervention to gain a federal forum for state-law claims." *Geithner*, 644 F.3d at 843. "Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away." *Id.*; *accord* 7C Wright & Miller, *Fed. Prac. & Proc.* § 1917 (3d ed. 2010) ("In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant[.]"). The Ninth Circuit's rule is consistent with the Supreme Court's explanation that an intervenor need only show Article III standing "in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017).

Proposed Intervenors are likely to be helpful to the Court in determining what constitutes a "reasonable" effort at list-maintenance in view of the NVRA's competing objectives. *See Winfrey*, 463 F. Supp. 3d at 801.

## CONCLUSION

For the reasons stated above, Proposed Intervenors respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

Dated: April 11, 2024

Respectfully submitted,

**BRAVO SCHRAGER LLP**

By: */s/ Bradley S. Schrager*
David R. Fox (NV Bar No. 16536)
Christopher D. Dodge (*pro hac vice*)
Marisa A. O'Gara (*pro hac vice*)
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
cdodge@elias.law
mogara@elias.law

Bradley S. Schrager (NV Bar No. 10217)
Daniel Bravo (NV Bar No. 13078)
**Bravo Schrager LLP**
6675 South Tenaya Way, Suite 200
Las Vegas, NV 89113
(702) 996-1724
bradley@bravoschrager.com
daniel@bravoschrager.com

*Attorneys for Proposed Intervenor-Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of April, 2024 a true and correct copy of Proposed Intervenors' Reply in Support of their Motion to Intervene as Defendants was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

By: */s/ Dannielle Fresquez*
Dannielle Fresquez, an Employee of
BRAVO SCHRAGER LLP