# EXHIBIT A

Kevin J. Hamilton *(Pro Hac Vice Pending)*
WA Bar No. 15648*
Margo S. Jasukaitis *(Pro Hac Vice Pending)*
WA Bar No. 57045*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: (206) 359-8000
KHamilton@perkinscoie.com
MJasukaitis@perkinscoie.com

Daniel H. Stewart
Nevada Bar No. 11287
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: (702) 464-7018
dstewart@bhfs.com

*Attorneys for the Democratic National Committee as amicus curiae*
*Motion for Admission Pro Hac Vice Pending

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, NEVADA REPUBLICAN PARTY, and SCOTT JOHNSTON, <br><br> Plaintiffs, <br><br> v. <br><br> FRANCISCO AGUILAR, *in his official capacity as Nevada Secretary of State*; LORENA PORTILLO, *in her official capacity as the Registrar of Voters for Clark County*; WILLIAM "SCOTT" HOEN, AMY BURGANS, STACI LINDBERG, and JIM HINDLE, *in their official capacities as County Clerks*, <br><br> Defendants. | Case Number 2:24-cv-00518-CDS-MDC <br><br> **AMICUS BRIEF OF THE DEMOCRATIC NATIONAL COMMITTEE IN SUPPORT OF DISMISSAL** |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 3

    A.   The DNC's interest in this lawsuit. .......................................................... 3

    B.   Plaintiffs' lawsuit is part of a campaign to cast doubt on our
         elections. ................................................................................................... 3

    C.   Plaintiffs' flawed legal claims and erroneous comparisons of
         registration and population data confirm their primary purpose is
         undermining public confidence in the upcoming elections. ................... 10

III.  CONCLUSION .................................................................................................. 18

TABLE OF CONTENTS – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

166501533.12

1

2

## TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

3

**CASES**

4

5

*Am. C.R. Union v. Phila. City Comm'rs*,
   872 F.3d 175 (3d Cir. 2017)..................................................................................6

6

*Anthony v. Miller*,
   No. 82269 (Nev. 2021) .........................................................................................4

7

8

*Ariz. Democratic Party v. Reagan*,
   No. CV-16-03618-PHX-SPL, 2016 WL 6523427 (D. Ariz. Nov. 3, 2016) ........11

9

*Arrington* v. *Gloria*,
   No. A-20-825149-W (Nev. Dist. Ct. 2020) ...........................................................4

10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................14

11

12

*Becker v. Gloria*,
   No. A-20-824878-W (Nev. Dist. Ct. 2020) ...........................................................4

13

*Bellitto v. Snipes*,
   935 F.3d 1192 (11th Cir. 2019) .................................................................2, 10, 16

14

15

*Donald J. Trump for President, Inc. v. Pennsylvania*,
   No. 20-3371, 2020 WL 7012522 (3d Cir. Nov. 27, 2020) ......................................4

16

*Donald J. Trump for President, Inc. v. Secretary of Pa.*,
   830 F. App'x 377 (3d Cir. 2020) ...........................................................................9

17

18

*Judicial Watch, Inc. v. Ill. State Bd. of Elections*,
   No. 1:24-cv-01867 (N.D. Ill. Mar. 5, 2024) .......................................................6, 7

19

*King v. Whitmer*,
   71 F.4th 511 (6th Cir. 2023) .................................................................................9

20

*Law v. Whitmer*,
   No. 82178, 2020 WL 7240299 (Nev. Dec. 8, 2020).............................................4

21

22

*Law v. Whitmer*,
   No. 20-OC-00163-1B (Nev. Dist. Ct. 2020)........................................................4

23

*League of Women Voters of Ariz. v. Reagan*,
   No. CV-18-02620-PHX-JAT, 2018 WL 4467891 (D. Ariz. Sept. 18, 2018)........11

24

25

TABLE OF AUTHORITIES – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## TABLE OF AUTHORITIES
### (CONTINUED)

2

**Page(s)**

3

*Marchant v. Gloria,*
   No. A-20-824884-W (Nev. Dist. Ct. 2020) ...................................................4

4

*Md. Election Integrity v. Md. State Bd. of Elections,*
   No. 1:24-cv-00672-SAG (D. Md. Mar. 6, 2024) ...........................................7

5

6

*Mont. Democratic Party v. Eaton,*
   581 F. Supp. 2d 1077 (D. Mont. 2008)........................................................11

7

8

*Pub. Int. Legal Found. v. Benson,*
   ___ F.Supp.3d ___, 2024 WL 1128565 (W.D. Mich. Mar. 1, 2024) .........5, 6

9

*Pub. Int. Legal Found. v. Bos. Elections Dep't,*
   No. 1:24-cv-010521 (D. Mass. Feb. 29, 2024) .............................................7

10

11

*Pub. Int. Legal Found. v. Dupuis,*
   No. 24-cv-00679 (N.D. Cal. Feb. 5, 2024) ...................................................7

12

*Pub. Int. Legal Found. v. Evans,*
   No. 1:21-cv-03180 (D.D.C. Dec. 06, 2021) .................................................7

13

14

*Pub. Int. Legal Found. v. Griswold,*
   No. 1:21-cv-03384 (D. Col. Dec. 16, 2021) .................................................7

15

*Pub. Int. Legal Found. v. Knapp,*
   No. 24-cv-01276 (S.C. D.C. Mar. 14, 2024) ................................................7

16

17

*Pub. Int. Legal Found. v. Nago,*
   No. 1:23-cv-00389 (D. Hawaii Dec. 21, 2023).............................................7

18

*Pub. Int. Legal Found. v. Winfrey,*
   No. 2:19-cv-13638 (E.D. Mich. June 30, 2020) ...........................................6

19

20

*Republican Nat'l Comm. v. Benson,*
   No. 1:24-cv-00262 (W.D. Mich. 2024) ........................................................6

21

*Rios-Andino v. Orange Cnty.,*
   51 F. Supp. 3d 1215 (M.D. Fla. 2014) ........................................................15

22

*Rodimer v. Gloria,*
   No. A-20-825130-W (Nev. Dist. Ct. 2020) .................................................4

23

24

*Stokke v. Cegavske,*
   No. 20-cv-2046 (D. Nev. 2020) ...................................................................4

25

TABLE OF AUTHORITIES – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

**STATUTES**

52 U.S.C. § 20501 ...................................................................................................1, 11

52 U.S.C. § 20507 ......................................................................................1, 2, 8, 11, 17

52 U.S.C. § 20511 ............................................................................................................12

NRS 293.530 .....................................................................................................................13

NRS 293.675 .....................................................................................................................13

**OTHER AUTHORITIES**

139 Cong. Rec. H2264 (daily ed. May 5, 1993) ...................................................11, 12

139 Cong. Rec. S2764 (daily ed. Mar. 11, 1993) .........................................................12

139 Cong. Rec. S27738 (daily ed. Mar. 11, 1993) .......................................................12

Berlinski et al., *The Effects of Unsubstantiated Claims of Voter Fraud on
    Confidence in Elections* J. Experimental Pol. Sci. 34 (2023) ...................................9

*Election Fraud Cases*, THE HERITAGE FOUND.,
    https://www.heritage.org/voterfraud/search?state=NV ......................................8

*False election claims have damaged GOP confidence in vote count, AP-NORC
    poll says*, PBS NEWS HOUR (July 11, 2023),
    https://www.pbs.org/newshour/politics/ap-norc-poll-false-election-claims-
    have-damaged-gop-confidence-in-vote-count .......................................................10

Michael Wines, *One Rationale for Voter ID Debunked, G.O.P. Has Another*, N.Y.
    TIMES (Mar. 23, 2017), https://www.nytimes.com/2017/03/23/us/election-
    fraud-voter-ids.html ................................................................................................10

Miles Parks, *Republican states swore off a voting tool. Now they're scrambling to
    recreate it*, NPR (Oct. 20, 2023),
    https://www.npr.org/2023/10/20/1207142433/eric-investigation-follow-up-
    voter-data-election-integrity ....................................................................................13

Nick Corasaniti et al., *G.O.P. Intensifies Scrutiny of Voting: 'We're Keeping a
    Close Eye on You'*, N.Y. TIMES (Apr. 20, 2024),
    https://www.nytimes.com/2024/04/20/us/politics/trump-rnc-voting-
    election.html...............................................................................................................5

TABLE OF AUTHORITIES – v

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

Nick Mordowanec, *Trump Already Claiming Interference in 2024 Election*, Newsweek (May 17, 2023), https://www.newsweek.com/trump-already-claiming-interference-2024-election-1800976 ..........................................................5

*Our Action Plan*, UNITED SOVEREIGN AMS., https://unite4freedom.com/action-plan/.............................................................................................................................7

Patrick Marley et al., *With push from Trump, Republicans plan blitz of election-related lawsuits*, WASH. POST (Mar. 22, 2024), available at 2024 WLNR 2535585..................................................................................................................4, 5, 7

Press Release, Nevada Attorney General, Attorney General Ford Announces Guilty Plea of Las Vegas Man Charged with Voter Fraud (Nov. 16, 2021), https://perma.cc/WN9D-T9V2................................................................................8

Press Release, Nevada Attorney General, Attorney General Ford Announces Guilty Plea of Las Vegas Man for Voting Twice in 2016 Election (Feb. 17, 2021), https://perma.cc/XP2E-EDWE;...........................................................8

*Response Rates*, U.S. Census Bureau, https://www.census.gov/acs/www/methodology/sample-size-and-data-quality/response-rates/ ...........................................................................................16

*Results of Lawsuits Regarding the 2020 Elections*, CAMPAIGN LEGAL CTR., https://campaignlegal.org/results-lawsuits-regarding-2020-elections ......................................3

S. Rep. No. 103-6 (1993) .......................................................................................12

*Statewide Voter Registration List*, Nevada Secretary of State, https://www.nvsos.gov/sos/elections/voters/nevvoter-statewide-list ......................................7

Suttmann-Lea & Merivaki, *The Impact of Voter Education on Voter Confidence: Evidence from the 2020 U.S. Presidential Election*, 22 Election L. J. 145 (2023)...........................................................................................................9, 10

U.S. Census Bureau, *Selected Population Profile in the United States*, https://data.census.gov/table/ACSSPP1Y2022.S0201?q=Total%20Population ....................14

U.S. Census Bureau, *Understanding and Using American Community Survey Data* (Sept. 2020), https://www.census.gov/content/dam/Census/library/publications/2020/acs/acs_general_handbook_2020.pdf............................................................14, 15, 16, 17

TABLE OF AUTHORITIES – vi

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

166501533.12

**TABLE OF AUTHORITIES**
(CONTINUED)

**Page(s)**

*Voter Registration & Election Management Solution Project*, NEV. SEC. OF STATE, https://www.nvsos.gov/sos/elections/vrems-project (last visited Apr. 30, 2024) ........................................................................................................... 13

*Voter Registration List Maintenance Programs*, NEV. SEC. OF STATE, https://www.nvsos.gov/sos/elections/voters/voter-record-maintenance (last visited Apr. 30, 2024) ........................................................................................... 13

Ximena Bustillo, *As Trump continues to remake RNC in his image, a new memo outlines what that looks like*, NPR (Mar. 15, 2024), https://www.npr.org/2024/03/15/1238765442/rnc-trump-republicans-whatley-lara-election-integrity-voter-fraud-early-voting ........................................................ 5

TABLE OF AUTHORITIES – vii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# I.    INTRODUCTION

This lawsuit is little more than political theater, designed less to address any real (much less substantial) issue with Nevada's voter registration lists, than to sow public distrust in the security and integrity of our electoral systems. It is no more than a continuation of Republicans' 2020 efforts to undermine public confidence in our elections. In the wake of the 2020 general election, they filed more than sixty lawsuits challenging the outcome. All were dismissed as meritless.

As the 2024 election approaches, the Republican National Committee (RNC) has resurrected that failed strategy by preemptively filing lawsuits like this one around the country, challenging voter registration list maintenance programs based on flawed interpretations of the National Voter Registration Act (NVRA), 52 U.S.C. § 20501 *et seq.*, and obviously erroneous data. Courts have expeditiously disposed of these challenges. This Court should do the same.

Plaintiffs' patently flawed allegations confirm that their real interest is not to bring serious claims, but to use the judicial system to erode public confidence in our elections. The NVRA was expressly designed to encourage voter registration among eligible voters and to protect the integrity and accuracy of electoral systems, including voter rolls. The NVRA mandates only that states operate a "general program that makes a reasonable effort" to remove the names of ineligible voters who have moved or died. 52 U.S.C. § 20507(a)(4)(A). Nevada administers a robust "general program" to maintain the accuracy of its voter registration lists. *See* ECF No. 26 at 4. Plaintiffs do not even begin to allege, much less demonstrate, how Nevada's maintenance program violates the NVRA's "reasonable effort" requirement. On its face, their Complaint thus falls far short of plausibly alleging a violation of the NVRA.

Moreover, if Plaintiffs' real objective were something other than political stagecraft, they would not anchor their claims in an obviously flawed data analysis. In alleging that the number of

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

166501533.12

people on certain counties' voter rolls exceeds the voting-age population, Plaintiffs rely on population estimates compiled from survey data collected over a five-year period. The registration data to which they compare those estimates are, by contrast, a snapshot taken at a specific moment in time. It's hardly a surprise that such an apples-to-oranges approach would yield facial inconsistencies, or that when courts have considered this methodology, they rejected it. *See Bellitto v. Snipes*, 935 F.3d 1192, 1207 (11th Cir. 2019).

Finally, Plaintiffs' political purpose in bringing this lawsuit is revealed by the lack of remedies available to them. The NVRA expressly prohibits states from implementing systematic programs to cancel voter registrations within ninety days of a federal election. 52 U.S.C. § 20507(c)(2)(A). Plaintiffs cannot get relief before Nevada's June 11 primary election because the NVRA required Nevada to suspend any voter removal program no later than March 13, five days *before* Plaintiffs filed their Complaint. And in order to secure relief during the narrow window between the June 11 election and the ninety-day cutoff before the November 5 general election, Plaintiffs would have needed to seek expedited relief. They did not.

These circumstances make clear that this lawsuit is not meant to protect the integrity of upcoming elections, but instead to provide the RNC and its Republican allies with ammunition to undermine the general election's results. Indeed, former President Trump is already asserting interference with the 2024 general election, months before a single vote has been cast or counted.

The reality is, there is nothing improper about Nevada's voter registration maintenance programs. Swift dismissal of this case will avoid perpetuating the RNC's efforts to undermine election integrity. Secretary of State Francisco Aguilar's pending Motion to Dismiss should be granted.

/ / /

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## II.     ARGUMENT

### A.     The DNC's interest in this lawsuit.

As the principal party committee of the United States Democratic Party, the Democratic National Committee (DNC) has a strong interest in this litigation. The DNC supports the election of Democrats to all levels of political office, from the school board to the Oval Office, by mobilizing voters across the Nation. Its focus includes reducing barriers to voting by ensuring voters are not kept from registering to vote, improperly removed from the voter rolls, or otherwise barred from casting their ballot. The DNC is the Democratic counterpart to the plaintiffs in this litigation: the RNC. The DNC thus has compelling reasons for seeking to assist the Court in interpreting and applying the NVRA.

The DNC also brings a unique perspective based on its vast experience with the efforts of conservative groups and candidates to undermine public confidence in our elections. The DNC participated in many of the sixty-plus lawsuits filed in 2020 in which parties sought to cast doubt on election systems, nullify the lawful votes of millions of Americans, and overturn election results. That experience allows the DNC to provide insight into the unspoken purpose of this lawsuit and Plaintiffs' transparent attempt to cast a cloud over the 2024 elections.

### B.     Plaintiffs' lawsuit is part of a campaign to cast doubt on our elections.

In recent years, Republican entities have brought a series of meritless challenges to list maintenance programs and other election processes. This lawsuit is merely a continuation of these groups' 2020 efforts to sow public discontent about our elections.

After former President Trump lost the 2020 election, he and Republican entities filed more than sixty cases seeking to challenge the election results.[1] None of those cases succeeded in

---

[1] See *Results of Lawsuits Regarding the 2020 Elections*, CAMPAIGN LEGAL CTR., https://campaignlegal.org/results-lawsuits-regarding-2020-elections (last visited Apr. 12, 2024).

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 3

166501533.12

overturning the vote; all were roundly rejected by judges across the political ideological spectrum.[2] This spate of litigation included post-election challenges filed in Nevada.[3] Nevada courts uniformly rejected the Republican plaintiffs' attempts to overturn the state's election results, finding "no credible or reliable evidence that the 2020 General Election in Nevada was affected by fraud." *E.g.*, *Law v. Whitmer*, No. 82178, 2020 WL 7240299, at *10 (Dec. 8, 2020) (quote from trial court decision, attached to Supreme Court opinion affirming denial of election contest). Relevant here, the *Whitmer* trial court specifically rejected plaintiffs' allegations that voter fraud was caused in part by alleged improper voter list maintenance. *Id.* at *13 ("The record does not support a finding that Nevada failed to cure its voter lists to reflect returned ballots during the 2020 primary election and that, as a result, ballots were delivered to addresses where no known voter lives and were cast and counted . . . "). The Nevada Supreme Court affirmed the trial court's finding that the Republicans' evidence was based on hearsay and "of little to no value." *Id.* at *2, *15.

The current lawsuit echoes the same themes from these past election contests. Undeterred by their repeated courtroom losses in 2020, the RNC continues to make baseless claims of voter fraud, which do nothing to protect the integrity of elections and instead threaten grave damage to voters' confidence in election outcomes. Former President Trump is already asserting interference

---

[2] *See* Patrick Marley et al., *With push from Trump, Republicans plan blitz of election-related lawsuits*, WASH. POST (Mar. 22, 2024), available at 2024 WLNR 2535585; *see e.g., Donald J. Trump for President, Inc. v. Pennsylvania*, No. 20-3371, 2020 WL 7012522, at *1–7 (3d Cir. Nov. 27, 2020) (condemning post-election lawsuits as seeking "drastic," "breathtaking," "unprecedented," and "disenfranchising" relief of nullifying the voters' decision and awarding the election to President Trump).

[3] *See Law v. Whitmer*, No. 20-OC-00163-1B (Nev. Dist. Ct. 2020); *Stokke v. Cegavske*, No. 20-cv-2046 (D. Nev. 2020); *Marchant v. Gloria*, No. A-20-824884-W (Nev. Dist. Ct. 2020); *Becker v. Gloria*, No. A-20-824878-W (Nev. Dist. Ct. 2020); *Arrington* v. *Gloria*, No. A-20-825149-W (Nev. Dist. Ct. 2020); *Rodimer v. Gloria*, No. A-20-825130-W (Nev. Dist. Ct. 2020); *Anthony v. Miller*, No. 82269 (Nev. 2021).

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

with the 2024 general election, months before a single vote has been cast or counted.[4] The RNC's 2024 campaign strategy ranks "election integrity" as a key priority, and the RNC has been open about its plans to utilize litigation to advance its goals in the runup to this year's general election.[5] By creating a false narrative that American elections are replete with election fraud and vowing to put an end to it, the RNC positions itself as the antidote to a fictional crisis of its own making. Based on the former President's recent statements, the RNC's strategy—of which this lawsuit is a part—is also a clear attempt to lay groundwork for future post-election litigation claiming that the 2024 election was marred by fraud.

The RNC's claims regarding election integrity are as unfounded today as they were four years ago. Indeed, other federal courts recently rejected strikingly similar attempts to challenge list maintenance practices. For example, the United States District Court for the Western District of Michigan rejected the notion that Michigan Secretary of State Jocelyn Benson's program to remove deceased voters was conducive to fraud. *See Pub. Int. Legal Found. v. Benson*, ___ F.Supp.3d ___, 2024 WL 1128565, at *12 (W.D. Mich. Mar. 1, 2024) ("After conducting more than nine months of discovery into the many facets of Michigan's program for the removal of deceased registrants, PILF has identified no genuine issue for trial regarding its claim that the

---

[4] *See, e.g.*, Nick Mordowanec, *Trump Already Claiming Interference in 2024 Election*, Newsweek (May 17, 2023), https://www.newsweek.com/trump-already-claiming-interference-2024-election-1800976.

[5] *See* Ximena Bustillo, *As Trump continues to remake RNC in his image, a new memo outlines what that looks like*, NPR (Mar. 15, 2024), https://www.npr.org/2024/03/15/1238765442/rnc-trump-republicans-whatley-lara-election-integrity-voter-fraud-early-voting; Nick Corasaniti et al., *G.O.P. Intensifies Scrutiny of Voting: 'We're Keeping a Close Eye on You'*, N.Y. Times (Apr. 20, 2024), https://www.nytimes.com/2024/04/20/us/politics/trump-rnc-voting-election.html (RNC unveils plan to deploy 100,000 volunteers and lawyers to monitor elections in battleground states); Marley et al., *supra* note 2 (RNC official stating that litigation is a key part of former President Trump's 2024 campaign strategy).

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 5

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

program is not reasonable."). In that case, the plaintiff's allegations, like Plaintiffs' allegations here, were "based on [its] own . . . matching" of "potentially deceased voters" on voter rolls with publicly available data, including the Social Security Death Index. *See id.* at *9–11.[6] The court recognized the substantial threat such a lawsuit posed to voters, including that "purging voters from the rolls requires voters to re-register and hinders participation in elections." *Id.* at *1 (quoting *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 178 (3d Cir. 2017)).

Less than two weeks after PILF's lawsuit was dismissed, the RNC and two Michigan voters filed yet another case alleging Michigan must be violating the NVRA because its voter registration rates are too high. *See Republican Nat'l Comm. v. Benson*, No. 1:24-cv-00262, ECF No. 1 (W.D. Mich. Mar. 13, 2024). On April 16, 2024, the judge in that case ordered the plaintiffs to file an amended complaint or respond to the defendant's Motion to Dismiss. *Id.* at ECF No. 22 (W.D. Mich. Apr. 16, 2024).

This case and its Michigan counterpart are just the latest efforts in the ongoing conservative attempt to use litigation to aggressively purge voter rolls. The suits follow an earlier Michigan case brought by PILF, which alleged that Michigan's voter roll maintenance programs violated the NVRA. (That case was ultimately voluntarily dismissed). *See Pub. Int. Legal Found. v. Winfrey*, No. 2:19-cv-13638, ECF No. 57 (E.D. Mich. June 30, 2020). And last month in Illinois, Judicial Watch filed a lawsuit alleging that the Illinois State Board of Elections is presumptively violating the NVRA because "in Plaintiffs' experience" the number of removals based on changed residency was "absurdly small" compared to Census data. *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 1:24-cv-01867, ECF No. 1 at 8, ¶ 31 (N.D. Ill. Mar. 5, 2024). Meanwhile, other

---

[6] Plaintiff, the conservative group Public Interest Legal Foundation ("PILF") recently appealed this decision to the U.S. Court of Appeals for the Sixth Circuit. *See Pub. Int. Legal Found. v. Benson*, No. 24-1255 (6th Cir. Mar. 27, 2024).

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

groups have filed a suit in Maryland asking for aggressive purges and questioning other legitimate methods of election administration in that state. *See Md. Election Integrity v. Md. State Bd. of Elections*, No. 1:24-cv-00672-SAG, ECF No. 1 (D. Md. Mar. 6, 2024). United Sovereign Americans, one of the plaintiffs in the Maryland case, claims it is planning to bring additional suits across the country.[7] Simultaneously, similar groups have been litigating a set of lawsuits across California, Colorado, the District of Columbia, Hawaii, Maine, Massachusetts, and South Carolina seeking records related to voter registration lists—presumably to support additional litigation focused on purging voters from the rolls.[8] Last month, the RNC chairman suggested even more lawsuits are on the way.[9]

The timing of these lawsuits is suspect, indicative of political tactics rather than a serious legal claim. Information about voter registration has long been available on the Nevada Secretary of State's website.[10] Yet the RNC waited until March of a presidential election year to file its complaint. More precisely, the RNC waited to file this suit until five days *after* the deadline by which Nevada was required by law to cease all voter removal programs in advance of the June

---

[7] *Our Action Plan*, UNITED SOVEREIGN AMS., https://unite4freedom.com/action-plan/ (last visited Apr. 30, 2024) ("Our litigation process, launched in Maryland, brings self-evident facts from official data into federal court and seeks an injunction against the use of provably broken voting systems for administering our elections. We are prepared to file in nine states. Thirteen additional states are perparing [sic] evidence. We seek a Supreme Court ruling before the 2024 election.")

[8] *See Pub. Int. Legal Found. v. Griswold*, No. 1:21-cv-03384, ECF No. 1 (D. Col. Dec. 16, 2021); *Pub. Int. Legal Found. v. Nago*, No. 1:23-cv-00389, ECF No. 1 (D. Hawaii Dec. 21, 2023); *Pub. Int. Legal Found. v. Dupuis*, No. 24-cv-00679 (N.D. Cal. Feb. 5, 2024); *Pub. Int. Legal Found. v. Bos. Elections Dep't*, Case No. 1:24-cv-010521, ECF No. 1 (D. Mass. Feb. 29, 2024); *Pub. Int. Legal Found. v. Knapp*, No. 24-cv-01276 (S.C. D.C. Mar. 14, 2024); *Pub. Int. Legal Found. v. Evans*, No. 1:21-cv-03180, ECF No. 1 (D.D.C. Dec. 06, 2021).

[9] *See* Marley et al., *supra* note 2.

[10] *Statewide Voter Registration List*, Nevada Secretary of State, https://www.nvsos.gov/sos/elections/voters/nevvoter-statewide-list ("The statewide voter registration database is publicly accessible through this office and available in either hard copy or by a variety of electronic formats.")

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

primary. Plaintiffs are also unlikely to secure their desired relief before the 2024 general election. Federal law forbids canceling voter registrations based on a potential change of residence within ninety days of a federal election. 52 U.S.C. § 20507(c)(2). As a result, Nevada may only remove voters from the rolls between June 12, 2024 – August 7, 2024. Despite this, the RNC has sought neither preliminary nor any other forms of expedited relief. This litigation cannot produce the relief Plaintiffs seek before the November 5 general election; its only purpose is to recklessly sow doubt about the integrity of that election.

Indeed, despite their insistence voter fraud is rampant in Nevada, Plaintiffs point to just two isolated instances of voter fraud in Nevada, neither of which involve failures of Nevada's list maintenance programs. *See* ECF No. 1 at ¶ 40. Both involve individuals who pled guilty to voting twice—one person in the 2016 general election and one person in the 2020 general election.[11] In other words, out of the millions of votes cast in Nevada between 2016 and today, just two were fraudulent. Even looking back further in time, these two instances of admitted fraud are part of a vanishingly small number of voter fraud cases in Nevada. The Heritage Foundation has identified only eight instances of voter fraud in Nevada since 2011.[12] Of those, only five involve individuals who voted more than once or voted under a false name.[13] Put differently, over a period of more

---

[11] Press Release, Nevada Attorney General, Attorney General Ford Announces Guilty Plea of Las Vegas Man for Voting Twice in 2016 Election (Feb. 17, 2021), https://perma.cc/XP2E-EDWE; Press Release, Nevada Attorney General, Attorney General Ford Announces Guilty Plea of Las Vegas Man Charged with Voter Fraud (Nov. 16, 2021), https://perma.cc/WN9D-T9V2.

[12] *Election Fraud Cases*, THE HERITAGE FOUND., https://www.heritage.org/voterfraud/search?state=NV (last visited May 5, 2024).

[13] The remaining three convictions involve people who improperly completed or collected other people's voter registration forms and someone who submitted a falsified petition. *See Election Fraud Cases*, THE HERITAGE FOUND., https://www.heritage.org/voterfraud/search?state=NV (last visited May 5, 2024) (summarizing convictions related to "Ballot Petition Fraud" and "False Registrations").

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

than ten years during which nearly eight million ballots were cast in statewide elections in Nevada, just five people were convicted of the kind of fraud Plaintiffs insist is so rampant this Court must intervene to stop it. Again, courts around the Nation have rightly rejected baseless claims of voter fraud from Republican candidates and their supporters. *Law*, 2020 WL 7240299 at \*10 (finding "no credible or reliable evidence that the 2020 General Election in Nevada was affected by fraud"); *King v. Whitmer*, 71 F.4th 511, 528 (6th Cir. 2023) (noting that Republicans' legal claims "relied exclusively on frivolous allegations of widespread voter fraud"); *Donald J. Trump for President, Inc. v. Secretary of Pa.*, 830 F. App'x 377, 381 (3d Cir. 2020) ("[C]alling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here.").

In reality, the greatest threat to confidence in the integrity of our elections is not fraud or voter-roll maintenance practices, but unfounded attacks on election integrity. Political science literature confirms the danger these baseless accusations pose to the public's perception of election results. One recent peer-reviewed study found "unsubstantiated voter-fraud claims undermine confidence in elections [and] these effects cannot easily be ameliorated by fact-checks or counter-messaging." Berlinski et al., *The Effects of Unsubstantiated Claims of Voter Fraud on Confidence in Elections*, 10 J. Experimental Pol. Sci. 34, 36 (2023).[14] Another confirmed that "[p]erceived problems in election administration, especially if these problems are highly advertised, exaggerated, or outright false, negatively affect voter confidence." Suttmann-Lea & Merivaki, *The Impact of Voter Education on Voter Confidence: Evidence from the 2020 U.S. Presidential Election*, 22 Election L. J. 145, 147 (2023).[15] Commentators similarly agree that unfounded attacks

---

[14] https://www.cambridge.org/core/services/aop-cambridge-core/content/view/9B4CE6DF2F573955071948B9F649DF7A/S205226302100018Xa.pdf/effects_of_unsubstantiated_claims_of_voter_fraud_on_confidence_in_elections.pdf.

[15] https://www.liebertpub.com/doi/epdf/10.1089/elj.2022.0055.

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   have a deleterious effect on the public's overall confidence in elections. For example, while

2   proponents of restrictive registration and voting laws "have traditionally argued that such laws are

3   needed to police rampant voter fraud—a claim most experts call unfounded—some are now saying

4   the perception of fraud, real or otherwise, is an equally serious problem, if not worse." *See* Michael

5   Wines, *One Rationale for Voter ID Debunked, G.O.P. Has Another*, N.Y. TIMES (Mar. 23, 2017),

6   https://www.nytimes.com/2017/03/23/us/election-fraud-voter-ids.html; *see also False election*

7   *claims have damaged GOP confidence in vote count, AP-NORC poll says*, PBS NEWS HOUR (July

8   11,   2023),   https://www.pbs.org/newshour/politics/ap-norc-poll-false-election-claims-have-

9   damaged-gop-confidence-in-vote-count ("[T]he persistent messaging has sunk in among a wide

10  swath of the American public."). This suit is just one component of a broader campaign to poison

11  voter confidence by advertising and exaggerating false claims about our elections.

12      What is at stake here is not, as Plaintiffs would have this Court believe, the integrity of the

13  forthcoming election, but rather the public's confidence in that election. As other courts have in

14  cases across the country, this Court should dismiss the suit.

15  **C.      Plaintiffs' flawed legal claims and erroneous comparisons of registration and
16          population data confirm their primary purpose is undermining public
          confidence in the upcoming elections.**

17      Plaintiffs' challenges to Nevada's voter roll maintenance practices—and the calculations

18  underlying them—are plainly flawed. *See Bellitto v. Snipes*, 935 F.3d 1192, 1207–08 (11th Cir.

19  2019) (explaining flaws inherent in using ACS data to calculate registration rates). That Plaintiffs

20  would advance theories and methodologies doomed to fail suggests strongly that their real purpose

21  is to cast doubt on the upcoming 2024 elections and set the stage for potential post-election

22  challenges. The Court should promptly shut down this dangerous gambit.

23  / / /

24  / / /

25  AMICUS BRIEF OF THE DNC
    ISO DISMISSAL (No. 2:24-cv-00518) – 10

### 1.      The NVRA is designed to protect voters' registrations.

As an initial matter, Plaintiffs fall far short of alleging a viable claim under the NVRA. Congress enacted the NVRA to advance two goals: increasing registration rates among eligible voters and protecting the integrity and accuracy of electoral systems, including voter rolls. 52 U.S.C. § 20501(b). To accomplish the first goal, the NVRA mandates that states "ensure that any eligible applicant is registered to vote." 52 U.S.C. § 20507(a)(1). To accomplish the second goal, the NVRA mandates that states "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" who have died or moved out of their voting jurisdiction. 52 U.S.C. § 20507(a)(4).

These purposes "counterpose two general, sometimes conflicting mandates: To expand and simplify voter registration processes so that more individuals register and participate in federal elections, while simultaneously ensuring that voter lists include only eligible … voters." *See League of Women Voters of Ariz. v. Reagan*, No. CV-18-02620-PHX-JAT, 2018 WL 4467891, at *1 (D. Ariz. Sept. 18, 2018) (citing *Ariz. Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427, at *12 (D. Ariz. Nov. 3, 2016)).

Aware of the inherent tension in these goals, Congress struck a balance. The Act makes it easier to register to vote and "establishes limits on the processes states may use to purge their voter rolls of ineligible voters." *See Mont. Democratic Party v. Eaton*, 581 F. Supp. 2d 1077, 1081 (D. Mont. 2008). But as Representative Vic Fazio explained, "Although H.R. 2 removes arbitrary barriers to voter registration, it balances this increased participation in the electoral process with Federal protection against fraud, safeguards against abuse, and stiff Federal penalties, up to five years in prison, for those who break the law." 139 Cong. Rec. H2264, H2274 (daily ed. May 5, 1993); *see also* S. Rep. No. 103-6, at 11 (1993) (explaining Federal criminal penalties and requirements that states review proof of voter eligibility reduce risk of fraud); 52 U.S.C. § 20511(2)

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

166501533.12

1   (criminalizing voter fraud). Taken together, these provisions—the high bar a state must clear

2   before removing a voter from the rolls and the high cost to an individual who takes advantage of

3   imperfect rolls to commit fraud—reflect Congress's calculus that it is better to keep voters on the

4   rolls for a relatively longer period and deter abuse than to more aggressively maintain voter rolls

5   and risk prematurely and/or erroneously removing eligible voters.

6        With this objective in mind, Congress required states to engage in additional steps before

7   removing a voter from the rolls even though it knew "the purge procedure outlined in the bill [was]

8   costly" and would "caus[e] boards of elections to bear the costs and the risks of inflated voter rolls"

9   during the waiting period after a voter failed to respond to a notice but before they could be

10  removed from the registration list. *See* 139 Cong. Rec. S27738, S2753 (daily ed. Mar. 11, 1993)

11  (letter in record from Ohio Secretary of State); *see also* 139 Cong. Rec. S2764, S2767 (daily ed.

12  Mar. 11, 1993) (letter in record from California Controller) ("Much of the additional expense is

13  associated with having more people on the voter rolls …. I believe we should not put a price tag

14  on citizen participation, so long as those costs are within reason—which in this case they clearly

15  are.").

16       Congress's insistence that states comply with additional procedures before removing a

17  voter from the rolls (i.e., requiring confirmation a voter moved or that a voter fail to respond to a

18  notice *and* not appear to vote in two elections) confirms its priority was maintaining robust

19  registration lists, even if that meant briefly retaining ineligible voters on the rolls. In light of this

20  expressed preference, high registration numbers alone (even "impossibly" high ones) are plainly

21  not sufficient to establish a violation of the NVRA.

22       Here, Nevada administers a robust "general program" to maintain the accuracy of its voter

23  registration lists. Nevada's counties ensure maintenance of their respective voter lists when a voter

24

25  AMICUS BRIEF OF THE DNC
    ISO DISMISSAL (No. 2:24-cv-00518) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

changes residence pursuant to NRS 293.530. The Nevada Secretary of State has an agreement with the Nevada Registrar of Vital Statistics to match information in the Vital Statistics database to the voter registration list. NRS 293.675(7). Each workday, the Secretary of State compares the Vital Statistics' records against the registration list. *Id.* The Secretary of State then sends the counties a list of individuals in their respective counties identified as deceased, and the counties then act on that information on a routine basis. Nevada has also been part of the Electronic Registration Information Center (ERIC) since 2012, which uses information from motor vehicle departments, Social Security Administration records, and other databases to compare voters within Nevada and in other member states.[16] Recently, Nevada passed Assembly Bill 422, initiating the Voter Registration & Election Management Solution (VREMS) Project. VREMS will establish a single, central platform at the state level, which will transmit data to the counties and expedite the identification of voters who have moved.[17] Plaintiffs do not even begin to allege, much less demonstrate, how such a maintenance program violates the NVRA's "reasonable effort" requirement. Even if the methodology they relied on were valid (it is not, as discussed below), Plaintiffs ask for something the NVRA expressly prohibits—the removal of voters who have not yet failed to cast a ballot in two elections. This falls far short of alleging a plausible cause for violation of the NVRA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (explaining complaints

---

[16] *Voter Registration List Maintenance Programs*, NEV. SEC. OF STATE, https://www.nvsos.gov/sos/elections/voters/voter-record-maintenance (last visited Apr. 30, 2024). Unfortunately, ERIC has been the target of misleading attacks, resulting in the withdrawal of nine states. *See* Miles Parks, *Republican states swore off a voting tool. Now they're scrambling to recreate it*, NPR (Oct. 20, 2023), https://www.npr.org/2023/10/20/1207142433/eric-investigation-follow-up-voter-data-election-integrity.

[17] *Voter Registration & Election Management Solution Project*, NEV. SEC. OF STATE, https://www.nvsos.gov/sos/elections/vrems-project (last visited Apr. 30, 2024).

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

166501533.12

are insufficient "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct").

### 2.   The RNC's core factual allegations do not suggest violations of the NVRA.

As important, the central factual premise of the litigation—comparing composite population estimates to snapshot registration rates years later—is plainly flawed.

Plaintiffs' use of data from the 2022 American Community Survey ("ACS") is more than a little misleading. For the vast majority of Nevada counties, and all but one county named in the Complaint, the ACS *estimates* the size of the voting age population by looking at data collected over the course of the last five years. This data cannot meaningfully be compared to the "most up-to-date count of registered voters available from the Nevada Secretary of State." ECF No. 1 at 11. Because they arbitrarily compare these two wholly distinct pieces of data, the "registration rates" on which Plaintiffs base their Complaint are simply meaningless.

The ACS is distinct from the decennial census in that it pools data collected from just 3.5 million addresses nationwide to create estimates. (By contrast, the current population of the United States is 333,287,562). *See* U.S. Census Bureau, *Selected Population Profile in the United States* (last visited May 5, 2024).[18] Importantly, "ACS estimates reflect data that have been collected over a period of time rather than for a single point in time." U.S. Census Bureau, *Understanding and Using American Community Survey Data* at 1 (Sept. 2020).[19]

There are two kinds of ACS estimates: For geographic areas with populations of 65,000 or more, the U.S. Census Bureau publishes so-called "ACS 1-year estimates." But the ACS's sample size is too small to provide reliable single-year estimates for areas with smaller populations. So,

---

[18] https://data.census.gov/table/ACSSPP1Y2022.S0201?q=Total%20Population.
[19] https://www.census.gov/content/dam/Census/library/publications/2020/acs/acs_general_handbook_2020.pdf.

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

for areas with populations below 65,000—including all but two of Nevada's counties—multiple years of data are pooled together to create "5-year estimates." *See id.* at 13. As the name suggests, these "5-year estimates" do not represent real-time data. To ensure a sufficiently large sample size, they incorporate data collected up to five years ago. *Id.* at 15. Given this, "researchers must choose between currency and accuracy when studying the demographics of a small population." *See Rios-Andino v. Orange Cnty.*, 51 F. Supp. 3d 1215, 1224 (M.D. Fla. 2014).

Here, currency is paramount, particularly because Plaintiffs compare the ACS data to more up-to-date registration data. ECF No. 1 at ¶ 49 (comparing data from the 2022 ACS with "the most up-to-date count of registered active voters available from the Nevada Secretary of State"). Yet, out of necessity, Plaintiffs rely on these 5-year estimates to calculate the alleged voter registration rates on which they base their claims. *See* ECF No. 1 at ¶¶ 49–51 (calculating "registration rates" for Douglas, Lyon, and Storey counties and Carson City, all of which have only 5-year estimates available); U.S. Census Bureau, *Understanding and Using American Community Survey Data* at 15 (Sept. 2020) ("For data users interested in obtaining detailed ACS data for small geographic areas (areas with fewer than 65,000 residents), ACS 5-year estimates are the only option.").[20] This decision to compare recent data from the Secretary of State's office with ACS 5-year estimates fatally corrupts the numbers underpinning the RNC's claims.

The method the RNC uses to compute the "registration rates" in its Complaint shares flaws with calculation methods already rejected by federal courts. *See Bellitto v. Snipes*, 935 F.3d 1192, 1207 (11th Cir. 2019) (rejecting similar analysis). Indeed, as the Eleventh Circuit noted in *Bellitto*, "the five-year estimate takes data drawn from the preceding five years and estimates the midpoint

---

[20] https://www.census.gov/content/dam/Census/library/publications/2020/acs/acs_general_handbook_2020.pdf

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

166501533.12

1  of that data." *Id.* That is, when Plaintiffs reference the "2022" five-year estimate, they are actually

2  referencing the estimated population in each county based on data collected from January 2018

3  through December 2022. This is a particularly fraught window given the unknown impact of the

4  COVID-19 pandemic on the data. The 2022 ACS had a response rate of just 84.4%—the second

5  lowest response rate in the survey's more than twenty-year history—due to lingering effects of the

6  coronavirus pandemic. (The only year with a lower response rate was 2020). *See Response Rates*,

7  U.S. Census Bureau (last visited Apr. 26, 2024).[21] More to the point, the Census Bureau confirms

8  these five-year estimates "do not describe any specific day, month, or year within that time period."

9  U.S. Census Bureau, *Understanding and Using American Community Survey Data* at 13 (Sept.

10  2020).[22]

11        But even setting that aside, the *Bellitto* Court noted the five-year estimate is troubled for

12  another reason: it "significantly underestimate[s] the population" in a jurisdiction with a growing

13  population. *See Bellitto*, 935 F.3d at 1208. Comparing such artificially low population estimates

14  with current registration data skews Plaintiffs' "registration rates" to the point of being unreliable.

15  *See id.* ("The district court determined that [these] calculations were misleading … and concluded

16  that the registration rates presented … were inaccurate.").

17        The five-year estimates and current registration data are mismatched for the separate reason

18  that the Secretary of State's count of registered active voters is a snapshot taken at a single point

19  in time. The number represents the number of registered voters at the moment a report is generated.

20  But both "[s]ingle-year and multiyear estimates from the ACS are … 'period' estimates derived

21

22

23  [21] https://www.census.gov/acs/www/methodology/sample-size-and-data-quality/response-rates/.

24  [22] https://www.census.gov/content/dam/Census/library/publications/2020/acs/acs_general_handbook_2020.pdf.

25  AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 16

from a sample collected over a period of time, as opposed to 'point-in-time' estimates." U.S. Census Bureau, *Understanding and Using American Community Survey Data* at 13 (Sept. 2020).[23] Comparing a recent snapshot of the number of registered voters with a multi-year estimate of the citizen voting age population is far from the one-to-one comparison Plaintiffs make it out to be.

Plaintiffs' reliance on the U.S. Election Assistance Commission survey is equally misguided. According to the Complaint, even though certain Nevada counties removed less than two percent of registered voters from the rolls, "more than 15% of Nevada's residents were not living in the same house as a year ago." ECF No. 1 at ¶¶ 62–63. But whether someone is living in the same *house* is entirely irrelevant to whether they must be removed from the voter rolls. The key question is whether they are living in the same *county*. The NVRA expressly prohibits removing a registered voter from the rolls just because they change addresses "within the same registrar's jurisdiction." 52 U.S.C. § 20507(f). Because Plaintiffs do not allege that any of the changes in residence it relies on involved voters moving to a different county or out of state, their comparison between relocation rates and removal rates is meaningless.

Even if the RNC's calculations reflected reality (which they do not), the RNC admits "[t]here is no evidence" counties with purportedly "suspiciously high" registration rates "experienced above-average voter participation." ECF No. 1 at ¶¶ 49, 57. Contrary to the RNC's contention that perfectly typical voter participation rates can be explained "only" by "substandard list maintenance," the data instead confirm the fraud Plaintiffs are so worried about is simply not happening. *See id.* ¶ 57.

/ / /

---

[23] https://www.census.gov/content/dam/Census/library/publications/2020/acs/acs_general_handbook_2020.pdf

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

In sum, Plaintiffs use imprecise data to make misleading comparisons between each county's alleged voting-age population and the number of registered voters in that county. Their sloppy approach is consistent with an intent to prioritize casting doubt on the 2024 elections over bringing viable legal claims. The resulting "registration rates" cannot and do not establish a violation of the NVRA.

### III.    CONCLUSION

For the forgoing reasons, amicus curiae DNC respectfully requests the Court grant the pending Motion to Dismiss.

DATED this 6th day of May, 2024.

By: /s/ Daniel H. Stewart

Daniel H. Stewart
Nevada Bar No. 11287
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: (702) 464-7018

Kevin J. Hamilton (Pro Hac Vice Pending)
WA Bar No. 15648*
Margo S. Jasukaitis (Pro Hac Vice Pending)
WA Bar No. 57045*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: (206) 359-8000

*Attorneys for the Democratic National Committee as amicus curiae*
**Motion for Admission Pro Hac Vice Pending*

AMICUS BRIEF OF THE DNC
ISO DISMISSAL (No. 2:24-cv-00518) – 18

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

166501533.12