Jeffrey F. Barr (NV Bar No. 7269)
8275 South Eastern Avenue, Suite 200
Las Vegas, NV 89123
(702) 631-4755
barrj@ashcraftbarr.com

Thomas R. McCarthy* (VA Bar No. 47145)
Gilbert C. Dickey* (VA Bar No. 98858)
Conor D. Woodfin* (VA Bar No. 98937)
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

Sigal Chattah (NV Bar No. 8264)
5875 S. Rainbow Blvd #204
Las Vegas, NV 89118
(702) 360-6200
sigal@thegoodlawyerlv.com

*Pro hac vice application pending

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, NEVADA REPUBLICAN PARTY, and SCOTT JOHNSTON,<br><br>Plaintiffs,<br><br>v.<br><br>FRANCISCO AGUILAR, *in his official capacity as Nevada Secretary of State*; LORENA PORTILLO, *in her official capacity as the Registrar of Voters for Clark County*; WILLIAM "SCOTT" HOEN, AMY BURGANS, STACI LINDBERG, and JIM HINDLE, *in their official capacities as County Clerks*,<br><br>Defendants. | No. 2:24-cv-00518-CDS-MDC<br><br>**OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTION TO INTERVENE [ECF No. 68]** |

# INTRODUCTION

The proposed intervenors have no right to help the State litigate this case. Plaintiffs allege that Nevada is falling short of its federally mandated duty to maintain accurate voter rolls. This case will turn on what procedures Nevada uses to remove ineligible voters, whether those procedures are sufficient, and whether those procedures are consistently followed. The proposed intervenors' concerns lie elsewhere.

To start, they have not shown a legally protectable interest in this matter. Their concern is that if Plaintiffs prove that Nevada is violating the NVRA, then the *remedy* for that violation might illegally sweep in eligible voters. But that interest is premature and hypothetical—nothing about this case, Plaintiffs' requested relief, or enforcement of the NVRA will result in eligible voters being improperly removed from the rolls. In any event, those interests are adequately represented by the state defendants. Two different presumptions of adequate representation apply because the State defendants have a statutory obligation to protect eligible voters and seek the same ultimate objective as proposed intervenors. And the proposed intervenors have no evidence that the State's representation will be deficient or that the defendants will otherwise fail to litigate this case effectively.

Intervention will also impose substantial costs on the parties while providing no benefit to the Court. Adding three new parties will encumber scheduling, increase the costs of litigation, and slow down proceedings. In the midst of election season, those setbacks are substantial. And the proposed intervenors will bring nothing new to the table—they have identified no arguments or positions they would take that the State would be unwilling to press. Their participation is at best superfluous. More likely, it will increase burdens on the parties and the Court.

For these reasons, federal courts routinely deny intervention to parties attempting to help the State litigate NVRA cases. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, No. 1:21-cv-929, 2022 WL 21295936, at *10-13 (W.D. Mich. Aug. 25, 2022); *Green v. Bell*, No. 3:21-cv-493, 2023 WL 2572210, at *6-7 (W.D.N.C. Mar. 20, 2023); *Jud. Watch, Inc. v. Griswold*, No. 1:20-cv-2992, 2021 WL 4272719, at *5 (D. Colo. Sept. 20, 2021); *Common Cause Ind. v. Lawson*, No. 1:17-cv-3936, 2018 WL 1070472, at *6 (S.D. Ind. Feb. 27, 2018); *Jud. Watch, Inc. v. King*, No. 1:12-cv-800, 2013 WL 12290842, at *2 (S.D. Ind. Mar. 20, 2013); *United States v. Florida*, No. 4:12-cv-285, 2012 WL 13034013, at *3 (N.D. Fla. Nov. 6, 2012); *Arcia v. Detzner*, No. 1:12-cv-22282, 2012 WL 12844562, at *3 (S.D. Fla. Sept. 28, 2012). The proposed intervenors here have no better showing, and the Court should deny the motion.

The report and recommendation invites this court to depart from this practice. It found that proposed intervenors' speculation was enough since a remedy in this case might remove eligible voters. R&R (Doc. 68) 5. And far from the presumptions of adequate representation, it applied a "minimal" standard satisfied by allegations that proposed intervenors "*may* be affected" by this case. *Id.* at 6. It also dismissed the delay and burdens inherent in adding parties because proposed intervenors don't seek to add claims. This Court should reject the report and recommendation, and deny the motion to intervene.

3

# BACKGROUND

The National Voter Registration Act requires each state to "conduct" a program that makes a "reasonable effort to remove the names of ineligible voters" who have moved or died. 52 U.S.C. 20507(a)(4). Plaintiffs—the Republican National Committee, the Nevada Republican Party, and Scott Johnston—brought this suit to remedy Nevada's violation of this requirement.

State defendants have vigorously defended this suit. Shortly after the suit was filed, the Secretary of State announced that he opposes the requested relief and would file a motion to dismiss. Nev. Sec'y of State, *Nevada Secretary of State Issues Statement on Lawsuit Filed by the Republican National Committee, Nevada Republican Party* (Mar. 29, 2024), https://perma.cc/UV9H-L7P4. That motion to dismiss has now been filed. Doc. 26.

Proposed intervenors—Rise Action Fund, the Institute for a Progressive Nevada, and the Nevada Alliance for Retired Americans—seek to intervene as defendants in this suit. They argued that they have a substantial interest in this suit because, among other things, relief in this case might lead to the improper removal of one of their members. Doc. 7 at 12. They also argued that they would be forced to divert resources to avoid the removal of eligible voters. *Id.* at 13-14. According to proposed intervenors, their interests will not be adequately represented by the State because the state must consider both the protection of eligible voters and the maintenance of accurate voter rolls. *Id.* at 17.

Plaintiffs opposed intervention. They explained that proposed intervenors did not have a significantly protectable interest to support intervention as of right because their concern that this case might lead to a remedy that resulted in the improper removal of their members from the voter rolls was too speculative. Doc. 18 at 4-6. And because these interests were too speculative, proposed intervenors could not get around the limits on intervention by diverting resources to address them. *Id.* at 6. They also explained that two presumptions of adequate representation applied because the State was

statutorily required to protect the interest of eligible voters and because the proposed intervenors and state defendants had the same ultimate objective of dismissal. *Id.* at 7-9. Finally, Plaintiffs argued that permissive intervention was unwarranted because it would delay proceedings with an election approaching and proposed intervenors had not identified any unique arguments that they would raise. *Id.* at 12-13.

Magistrate Judge Couvillier issued a report recommending that proposed intervenors be allowed to intervene both as of right and through permissive intervention. The report found that proposed intervenors had significant protectable interest because a remedy in this case might remove eligible voters and they could be forced to divert resources to avoid the "potential consequences" of this litigation. Doc. 68 at 5. Turning to adequate representation, the report concluded that proposed intervenors was a "minimal one" that had been met because their interest "*may* be affected." *Id.* at 6. On permissive intervention, the report concluded that there would be no undue delay because proposed intervenors do not seek to add claims and this litigation is at an early stage.

## **LEGAL STANDARD**

When a party objects to a magistrate judge's recommendation, this Court's review is "de novo." 28 U.S.C. §636(b)(1); *see also* Fed. R. Civ. P. 72 ("The district judge must determine de novo any part a magistrate judge's disposition that has been properly objected to."). After review, this Court can "accept, reject, or modify, in whole or in part, the findings or recommendations." 28 U.S.C. §636(b)(1).

## **ARGUMENT**

### I. **The proposed intervenors do not have a right to intervene in this case.**

To intervene as of right under Rule 24(a)(2), the proposed intervenors must file a timely motion that shows: (1) they have a significantly protectable interest in this case; (2) disposition of this case may impair their ability to protect that interest; and (3) their interest is not adequately represented by existing parties to the litigation. *Perry v.*

5
Objections to Report and Recommendation on Motion to Intervene

*Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). They "bear[] the burden of showing that *all* the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "Failure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry*, 587 F.3d at 950.

> **A. The proposed intervenors' speculation that members might be removed as a result of this litigation is not a significantly protectable interest.**

To satisfy the interest requirement of Rule 24, the proposed intervenors must show that they have an interest relating to this case. An interest is related to the case if "the resolution of the plaintiff's claims actually will affect" the intervenors. *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (citation omitted). The interest must be "legally protected" and "significant," and it cannot be "undifferentiated" or "generalized." *Alisal Water*, 370 F.3d at 920.

The report and recommendation found that the proposed intervenors have a protectable interest because they "seek to prevent improper removal of their members from Nevada's voter lists." R&R 5 (cleaned up). The report speculated that a remedy entered by this Court "could also remove eligible voters." *Id.*

The proposed intervenors' interest in preventing improper removal of their members is far too speculative to support intervention. To begin, the proposed intervenors don't have a "legally protected" interest in keeping ineligible voters on the rolls. *Alisal Water*, 370 F.3d at 920. And the intervenors don't claim such an interest. Instead, they argue that the NVRA gives them a right to challenge the improper removal of their members. *See* Doc. 7 at 12. But Plaintiffs' lawsuit does not ask the State to remove

eligible voters who are properly included on the registration lists. Affording complete relief to Plaintiffs in this case would not "actually … affect" the proposed intervenors' interest in ensuring those eligible members remain registered. *S. Cal. Edison*, 307 F.3d at 803 (citation omitted). Their interest in challenging the improper removal of their members is contingent on several events that have not yet occurred, including a determination that Nevada violated federal law (after motions practice, discovery, and potentially a trial); a determination that the violations require Nevada to adopt new procedures (rather than following existing procedures); and a proposed remedy that would require Nevada to adopt unlawful, overbroad list-maintenance procedures that would result in the improper removal of proposed intervenors' members who are eligible to vote. Those highly speculative events "fall[] far short of the 'direct, non-contingent, substantial and legally protectable' interest required for intervention as a matter of right." *Id.* (quoting *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981)). For this reason, a district court in Michigan recently ruled that interests that "turn on some amount of increased risk of future disenfranchisement," do not "constitute a substantial legal interest" in a NVRA case. *Pub. Int. Legal Found.*, 2022 WL 21295936, at *11.

The report and recommendation confirms the speculative nature of the proposed intervenors' interest. The report doesn't try to explain why preventing this Court from improperly removing proposed intervenors' members who are eligible voters is a direct, non-speculative, and non-contingent interest in *this case*. Instead, it offers bald speculation that relief in this case "could also remove eligible voters." R&R 5.

The report and recommendation cannot save this defect by saying that it "takes as true" the proposed intervenors "concerns." R&R 5. A district court must "take as true" the "nonconclusory allegations" of a proposed intervenor. *Sw. Ctr. for Biological*

*Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). That means a court should treat proposed intervenors asserted interests as true. But it does not permit a court to assume that those asserted interests are substantial and nonspeculative.

Even if all the contingencies underlying proposed intervenors' asserted interest came to pass, they can litigate the potential improper removal of their members once they have been "aggrieved by a violation of [the NVRA]." 52 U.S.C. §20510. Proposed intervenors suggest that they might "lack sufficient time" to file their own lawsuit. Doc. 7 at 12 n.4. But the NVRA's generous time provisions nullify those concerns. *See* 52 U.S.C. §20510(b)(3) ("If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice … before bringing a civil action…."). That the proposed intervenors haven't pointed to a violation, haven't sent the NVRA-required notice letter, and haven't filed a lawsuit are just concessions that whatever concerns they have are not ripe.

The only other interest that report and recommendation cited was that proposed intervenors "would be forced to divert their resources in order to combat the potential consequences of plaintiffs' claims." R&R 5. But proposed intervenors cannot bootstrap their speculative interests by spending resources to avoid theoretical impacts. *Id.* An "economic interest" must be "non-speculative," "concrete," and "related to the underlying subject matter of the action." *Alisal Water*, 370 F.3d at 919. And the report and recommendation recognized that proposed intervenors' resource diversion was based on speculation: it was to "combat … *potential consequences.*" R&R 5 (emphasis added). Since proposed intervenors' underlying interests are speculative, whatever money they spend in pursuit of those interests is likewise insufficient to support intervention. *See Pub. Int. Legal Found.*, 2022 WL 21295936, at *10 (ruling that an organization's resource

8

diversion failed to satisfy even the Sixth Circuit's "expansive notion of the interest sufficient to invoke intervention of right"). And "[w]here no protectable interest is present, there can be no impairment of the ability to protect it." *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 252 (D.N.M. 2008); *see also Sierra Club v. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993) (holding that the "third element of intervention as of right, impairment," generally "follows from" the second element).

Nor can any of proposed intervenors' other interests—not mentioned in the report and recommendation—provide a basis for intervention. Most of the proposed intervenors' interests have nothing to do with election administration, let alone Nevada's voter rolls. Rise's mission, for example, is "fighting for free public higher education and ending homelessness, housing insecurity, and food insecurity among college students." Doc. 7 at 4. Its priorities are "gun safety issues" and "student debt relief." Doc. 7 at 5. The Alliance for Retired Americans, meanwhile, works to "ensure the social and economic justice" of retirees. Doc. 7 at 7. But this case is about Nevada's compliance with the NVRA, not guns, homelessness, or student debt. None of those interests are "related to the underlying subject matter of the litigation." *Alisal Water*, 370 F.3d at 920.

The proposed intervenors' purported interests in registering voters are at least election-related, but this case doesn't concern those interests either. Institute for a Progressive Nevada, for example, claims an interest in providing "instructions on how to register and how to vote in Nevada." Doc. 7 at 6. But Plaintiffs' complaint alleges that the State is failing to *remove* ineligible voters from registration lists. It has nothing to do with registering voters or the process of voting. Regardless of the outcome of this case, the proposed intervenors can continue their efforts to help as many voters register and vote as they are able.

**B.      The proposed intervenors failed to make a "very compelling showing" that the State's representation will be inadequate.**

The report and recommendation misstated the standard when it found that proposed intervenors are not adequately represented by the State. Ordinarily, "the requirement of inadequacy of representation" requires only a "minimal" showing that the "representation of [the intervenors'] interests 'may be' inadequate." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). But that ordinary standard does not apply here for two reasons. To start, courts must apply an "assumption of adequacy when the government is acting on behalf of a constituency that it represents," which must be rebutted with a "*very* compelling showing." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (emphasis added). In addition, "[w]here the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry*, 587 F.3d at 951 (citations omitted).

The report and recommendation did not find that the proposed intervenors had made the "very compelling showing" that the State's representation will be inadequate. R&R 6. Instead, it announced that proposed intervenors' "burden was a minimal one," and found they had met it by showing that the government's interest "may interfere" with proposed intervenors because the government must also ensure accurate voter rolls. *Id.* (emphasis omitted).

The only reason hinted at for this lower burden in the report and recommendation fails a cursory review. The report said that intervention could be granted when the intervenors' interests are "narrower than that of the government and therefore may not be adequately represented." *Id.* (citation omitted). But the Ninth Circuit decision cited

10

Objections to Report and Recommendation on Motion to Intervene

for this proposition confirms that it is inapplicable here. In *Arakaki*, the Ninth Circuit found that that principle was not applicable where the "State defendants" had "specific statutory and constitutional obligations to protect" the interests asserted by proposed intervenors. 324 F.3d at 1087. Similarly here, the State *represents* the interests of voters. The Secretary is "the Chief Officer of Elections" for Nevada and "is responsible for the execution and enforcement" of list maintenance in compliance with the NVRA. Nev. Rev. Stat. §293.124. "While the Proposed Intervenors also claim an interest in ensuring such compliance, there is no reason to conclude that [the Secretary] … is unable to litigate this case in a way that protects that interest." *Green*, 2023 WL 2572210, at *6. Nor can that statutory obligation be dismissed because the state defendants have "twin objectives" of "easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter rolls." *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019). These objectives only confirm that Congress has charged the State with representing the very interests that intervenors claim in this case. The intervenors may prefer that the State ignore its duty to "protect[] electoral integrity," but the fact that the State is charged with that duty is hardly evidence that the State's representation of eligible voters will be inadequate. The report and recommendation's contrary conclusion that the presumption doesn't apply any time that a private party's interest could be described as "narrower" than the government despite a statutory obligation would mean that the presumption never applies.

Proposed intervenors—but not the report and recommendation—suggest that the "ultimate objective" presumption did not survive *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022). Even if that were true, *Berger* explicitly confirmed that it did not address the separate presumption that a private party is adequately

11
Objections to Report and Recommendation on Motion to Intervene

1  represented by the government: "we need not decide whether a presumption of ade-
2  quate representation might sometimes be appropriate when a private litigant seeks to
3  defend a law alongside the government." 597 U.S. at 197. In any event, *Berger* never
4  addressed whether a presumption of adequate representation should apply when a pri-
5  vate intervenor seeks the same ultimate objective as a party. It held only that no pre-
6  sumption applies "when a duly authorized state agent seeks to intervene to defend a
7  state law." *Id.* While it suggested in passing that similar—but not identical—interests
8  might not ordinarily be enough to trigger a presumption, it disclaimed resolving whether
9  a presumption applied "in any other circumstance." *Id.*

10       The proposed intervenors have not shown that they share a different ultimate
11 objective from the State defendants. The proposed intervenors quibble that some of
12 their interests might not align perfectly with the State's, but they undoubtedly share the
13 same *ultimate* objective: dismissal of the suit. *See Arizonans for Fair Elections v. Hobbs*, 335
14 F.R.D. 269, 275 (D. Ariz. 2020) (intervenors shared the same "ultimate objective" as the
15 State when both were "defending the constitutionality" of state laws); *Perry*, 587 F.3d at
16 951 (same). In fact, the State has already moved to dismiss this suit, and the proposed
17 intervenors have similarly submitted a motion to dismiss. *See* Docs. 21, 26. Not only do
18 these motions seek the same relief, but they also raise similar arguments.

19       Nor have proposed intervenors shown that the "ultimate objective" presumption
20 does not apply because they might have a broader reading of the restrictions on removal
21 in the NVRA. Doc. 20 at 9. In support of this argument, proposed intervenors cite a
22 decision where an agency defended an Interim Order that it was compelled to adopt
23 "under compulsion of a district court decision gained by Applicants" while "simultane-
24 ously appealing the decision." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647

25

F.3d 893, 899 (9th Cir. 2011). The Ninth Circuit recognized that these parties did not have identical objectives where an intervenor sought to argue that the agency order was "statutorily mandated," and the agency was arguing that "much narrower restrictions would … comply with its statutory mandate" in ongoing litigation. *Id.* That decision stops far short of finding that the "ultimate objective" presumption is inapplicable any time a private party might take a broader reading of some statutory provisions.

Neither the report and recommendation nor proposed intervenors have come forward with any evidence to rebut these presumptions of adequate representation. Proposed intervenors claim that other state officials in other cases "sometimes try to resolve suits like this one through settlement." Doc. 7 at 16. But that is not evidence that *these* state officials will resolve *this* case through settlement. Indeed, all the evidence so far is to the contrary—the Secretary and proposed intervenors have moved to dismiss on similar grounds. The proposed intervenors also claim that "partisan or private actors" often have interests that diverge from the government. But the partisan interests of the proposed intervenors and Democratic Secretary of State are aligned in this case. Even if they weren't, the "Proposed Intervenors must do more than allege—and superficially at that—partisan bias to meet it." *Miracle v. Hobbs*, 333 F.R.D. 151, 156 (D. Ariz. 2019). "Proposed Intervenors demonstrate no such deficiencies in the present case; indeed, they cannot," because the Secretary will defend this case and adequately represent the intervenors' interests. *Id.* at 155.

The cases finding inadequate representation only prove that intervention is not warranted here. Courts have recognized a compelling showing of inadequate representation when the State "fail[s] to appeal the court's judgment," and "intervention [is] vital to the defense of the law at issue." *Id.* (citing *Horne v. Flores*, 557 U.S. 433, 443 (2009)).

13

Objections to Report and Recommendation on Motion to Intervene

Similarly, when the government "seeks to overturn on appeal the very court decision" that protects the intervenors' interests, intervenors can show inadequate representation. *Citizens for Balanced Use*, 647 F.3d at 899. The state defendants are not employing such tactics here. The two "election cases" the intervenors cite are even further afield. One relied on the fact that the State's brief "reveal[ed] divergent arguments" compared to the Democratic Party intervenors' brief, which is itself questionable application of Ninth Circuit precedent. *Paher v. Cegavske*, No. 3:20-cv-243, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020). In the other election case, intervention was unopposed, and the court granted the motion "[w]ithout opining on the merits" of the intervention itself. *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-cv-1445, 2020 WL 5229116, at *1 (D. Nev. Aug. 21, 2020).

Unsurprisingly, courts have denied intervention for these same reasons in other NVRA cases. *See Pub. Int. Legal Found.*, 2022 WL 21295936, at *11 ("While the positions of the Proposed Intervenors and Secretary Benson may not identically align, their interests are sufficiently overlapping such that there is no substantial doubt that their concerns about disenfranchisement are already being adequately represented by Michigan's Secretary of State."); *Green*, 2023 WL 2572210, at *6 (ruling that the proposed intervenors failed to carry even "their 'minimal' burden of showing representational inadequacy"). In the end, the proposed intervenors claim nothing but "potential conflict" and interests that are not "identical." Doc. 7 at 16. Those unsupported claims do not make a "very compelling showing" that the State defendants' representation is inadequate. *Arakaki*, 324 F.3d at 1086.

## II. The court should deny permissive intervention.

To obtain permissive intervention under Rule 24(b), proposed intervenors must file a timely motion that showing that their claims share a question of law or fact with the main action. *S. Cal. Edison*, 307 F.3d at 803-04. Even if those requirements are satisfied, "the district court retains discretion to deny permissive intervention." *Id.* In exercising that discretion, the court "must consider whether intervention will unduly delay or prejudice the original parties and should consider whether the applicant's interests are adequately represented by the existing parties and whether judicial economy favors intervention." *Miracle*, 333 F.R.D. at 156.

Proposed intervenors' should be denied intervention for three reasons. First, the State defendants adequately represent the proposed intervenors' interests. Because he had concluded that the State did not adequately represent proposed intervenors, the magistrate judge did not consider this factor. But this is an independent reason to deny permissive intervention. The "[i]ntervenors' interests are aligned with those of Defendant[s]," who are "well-suited to defend" the claims in this case. *Id.* at 156 (denying permissive intervention based on adequate representation); *see also United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (denying permissive intervention to taxpayers where the governor adequately represented their interests). The existing parties are "capable of developing a complete factual record," *Perry*, 587 F.3d at 955-56, and the proposed intervenors' "participation is unnecessary to the full development of this case," *Arizonans for Fair Elections*, 335 F.R.D. at 276. As in other election cases, the "[i]ntervenors' interests align with the State's," and they have not shown that they "can more adequately defend state laws than the State itself." *Id.*

Objections to Report and Recommendation on Motion to Intervene

Second, the proposed intervenors' participation will delay proceedings and prejudice the parties. Because "[i]ntervening parties are entitled to all the rights and responsibilities of original parties to litigation," adding the intervenors will increase the costs of litigation, make scheduling more cumbersome, and inevitably slow down proceedings. *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 259; *see also Perry*, 587 F.3d at 955-56 (upholding the district court's determination that intervention "might very well delay the proceedings, as each group would need to conduct discovery on substantially similar issues," which "in all probability would consume additional time and resources of both the Court and the parties"). Even minor delays are especially problematic in "time sensitive" election cases such as this one, where "the general election is fast approaching." *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 259.

The report and recommendation concluded that there would not be undue delay because proposed intervenors are not adding claims and this case is in the early stage. R&R 8. But adding parties causes delay and complication even if they are not adding claims. That's why courts have denied permissive intervention in NVRA cases, recognizing that "[a]dding three more defendants, even if they submit joint filings, realistically portends more discovery and more motions, and therefore more time and resources expended before a resolution of the important issues in this case can be rendered." *Pub. Int. Legal Found.*, 2022 WL 21295936, at *12; *see also Green*, 2023 WL 2572210, at *7 (denying permissive intervention because the intervenors' "participation would needlessly complicate this litigation, consuming additional resources of the court and the parties, without any corresponding benefit" (cleaned up)). Because "timely resolution is critical to the integrity of the election process, both its perceived and actual integrity,"

the Court should deny permissive intervention. *Pub. Int. Legal Found.*, 2022 WL 21295936, at *12.

Third, the proposed intervenors have not pointed to any unique arguments or positions they would take up that the State defendants will not. Indeed, their proposed motion to dismiss confirms they offer nothing but duplicative arguments. They have provided the Court with no reasons to believe their participation would help the Court resolve the issues in this case. Any doubt on that score weighs in favor of permitting them to participate as amici, as the Democratic National Committee has done in this case. *See* Doc. 45. The report and recommendation never addressed this consideration.

## CONCLUSION

This Court should reject the Magistrate Judge's report and recommendation and deny the motion to intervene.

Dated: June 7, 2024                                     Respectfully submitted,

                                                                               */s/ Jeffrey F. Barr*

| | |
|---|---|
| Thomas R. McCarthy* | Jeffrey F. Barr |
|    VA Bar No. 47145 |    NV Bar No. 7269 |
| Gilbert C. Dickey* | ASHCRAFT & BARR LLP |
|    VA Bar No. 98858 | 8275 South Eastern Avenue |
| Conor D. Woodfin* | Suite 200 |
|    VA Bar No. 98937 | Las Vegas, NV 89123 |
| CONSOVOY MCCARTHY PLLC | (702) 631-4755 |
| 1600 Wilson Boulevard, Suite 700 | barrj@ashcraftbarr.com |
| Arlington, VA 22209 | |
| (703) 243-9423 | *Counsel for the Republican National Committee and Scott Johnston* |
| tom@consovoymccarthy.com | |
| gilbert@consovoymccarthy.com | |
| conor@consovoymccarthy.com | */s/ Sigal Chattah* |
| | |
| **pro hac vice application pending* | Sigal Chattah |
| |    NV Bar No. 8264 |
| *Counsel for Plaintiffs* | CHATTAH LAW GROUP |
| | 5875 S. Rainbow Blvd #204 |
| | Las Vegas, NV 89118 |
| | (702) 360-6200 |
| | sigal@thegoodlawyerlv.com |
| | |
| | *Counsel for the Nevada Republican Party* |

### CERTIFICATE OF SERVICE

    Plaintiffs' OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTION TO INTERVENE [ECF No. 68] was served on all appearing parties on the 7th day of June 2024 by electronic service by way of the Court's ECF System.

                                                                            */s/ Jeffrey F. Barr*
                                                                            An employee of Ashcraft & Barr LLP

Objections to Report and Recommendation on Motion to Intervene