1   Jeffrey F. Barr (NV Bar No. 7269)
    8275 South Eastern Avenue, Suite 200
2   Las Vegas, NV 89123
    (702) 631-4755
3   barrj@ashcraftbarr.com

4   Thomas R. McCarthy* (VA Bar No. 47145)
    Gilbert C. Dickey* (VA Bar No. 98858)
5   Conor D. Woodfin* (VA Bar No. 98937)
    1600 Wilson Boulevard, Suite 700
6   Arlington, VA 22209
    (703) 243-9423
7   tom@consovoymccarthy.com
    gilbert@consovoymccarthy.com
8   conor@consovoymccarthy.com

9   Sigal Chattah (NV Bar No. 8264)
    5875 S. Rainbow Blvd #204
10  Las Vegas, NV 89118
    (702) 360-6200
11  sigal@thegoodlawyerlv.com

12  *Admitted pro hac vice

13              UNITED STATES DISTRICT COURT
                    DISTRICT OF NEVADA
14

15  REPUBLICAN NATIONAL COMMITTEE,
    NEVADA REPUBLICAN PARTY, and SCOTT
16  JOHNSTON,                                No. 2:24-cv-00518-CDS-MDC

17                    Plaintiffs,

18          v.
                                             **PLAINTIFFS' RESPONSE**
19  FRANCISCO AGUILAR, *in his official capacity*   **TO SECRETARY'S**
    *as Nevada Secretary of State*; LORENA          **MOTION FOR LEAVE TO**
20  PORTILLO, *in her official capacity as the*     **SUPPLEMENT**
    *Registrar of Voters for Clark County*; WILLIAM **AUTHORITIES**
21  "SCOTT" HOEN, AMY BURGANS, STACI
    LINDBERG, and JIM HINDLE, *in their official*
22  *capacities as County Clerks*,

23                    Defendants.

24

25          *Arizona Alliance for Retired Americans v. Mayes* confirms that Plaintiffs'

26  amended complaint raises at least a plausible inference that the Plaintiffs suffer a

27  concrete injury. No. 22-16490, __ F.4th __, 2024 WL 4246721 (9th Cir. Sept. 20, 2024).

28  Unlike organizations that pursue "intangible social interests" such as "ensuring equal

1   protection or safeguarding property rights," *id.* at *6, the RNC and NVGOP's interests

2   are concrete: elect Republican candidates and turn out Republican voters. The

3   Plaintiffs pursue real-world activities to advance that mission, such as "contacting

4   voters who are not registered or eligible to vote," and engaging in "voter-registration

5   and get-out-the-vote initiatives." Pls.' Resp. to Sec'y Mot. to Dismiss (Doc. 108) at 7.

6   They filed this lawsuit because the Defendants' legal violations directly impede those

7   activities and damage their ability to elect Republicans. *See* Am. Compl. ¶¶13-20, 23-

8   26. Those allegations meet the Ninth Circuit's recent holding clarifying *Havens*: the

9   Plaintiffs engage in these "pre-existing core activities … apart from [their] response

10  to [the] governmental action." *Ariz. All.*, 2024 WL 4246721, at *2.

11      In fact, *Arizona Alliance* tracks Plaintiffs' standing arguments in response

12  Nevada Alliance for Retired Americans' intervention in this case. The Plaintiffs

13  argued that the intervenors' interests in preventing *others* being removed from the

14  voter rolls was speculative and remote. *See* Pls.' Obj. (Doc. 85) at 7-9. While this Court

15  held that those interests were sufficient for intervention, the Ninth Circuit held that

16  they are insufficient to show Article III standing. The Arizona Alliance lacked

17  standing because "[t]he only harm" it offered was "the potential diversion of resource

18  to remind people of the far-fetched possibility that the registrar of voters may

19  somehow mistakenly or maliciously cancel their new voting registration form if they

20  had earlier registered elsewhere." *Arizona All.*, 2024 WL 4246721, at *11. In contrast,

21  the Plaintiffs' injuries here do not rely on predicting what might happen to their

22  members. They allege that Defendants' NVRA violations harm the Plaintiffs'

23  organizational activities *right now*. Those violations make it more difficult to register

24  voters, turn out Republicans to vote, and elect Republican candidates, which are

25  "already-existing core activities." *Id.* at *8.

26      Thus, this case is like *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

27  Like HOME, the Plaintiffs here pursue a real-world mission. HOME sought to provide

28  "counseling and other referral services," *id.* at 379, while the Plaintiffs here seek to

1

Response to Supplemental Authority

1   elect Republican candidates and turn out Republican voters, Am. Compl. ¶¶13-20, 23-
2   26. Like HOME, the Plaintiffs here allege legal violations that "frustrate" those
3   "efforts" and show a "concrete and demonstrable injury to [their] activities." *Havens*
4   *Realty*, 455 U.S. at 379. Like HOME, the Plaintiffs here suffer those injuries "apart
5   from [their] response" to the Defendants' legal violations. *Ariz. All.*, 2024 WL 4246721,
6   at *2. And just as HOME "not only was an issue-advocacy organization, but also
7   operated a housing counseling service," *FDA v. All. for Hippocratic Med.*, 602 U.S. 367,
8   395 (2024), the Plaintiffs here not only advocate for Republican issues, but also work
9   to elect Republican candidates, provide voter-registration services, and operate get-
10   out-the-vote initiatives, *see* Am. Compl. ¶¶14-17. It is *those* activities—not "general
11   legal, moral, ideological, or policy objection[s]"—that Defendants' legal violations
12   frustrate. *All. for Hippocratic Med.*, 602 U.S. at 381.

13       The Secretary suggests that organizations suffer "direct harm" to "core
14   activities" only when they challenge "a law that regulates their activities." Mot. 3-4.
15   *Havens* itself disproves that theory. HOME did not challenge a law that directly
16   applied to HOME as an organization. It challenged an illegal practice that had the
17   *effect* of "interfer[ing] with HOME's core business activities." *All. for Hippocratic Med.*,
18   602 U.S. at 395. *Arizona Alliance* explained that the defendant "had perceptibly
19   impaired HOME's core and ongoing ability to provide counseling and referral
20   services." 2024 WL 4246721, at *10. That's exactly what Plaintiffs allege here. The
21   NVRA requires Defendants to maintain accurate voter rolls. It requires them to make
22   that information publicly available. And it gives private citizens and organizations a
23   right to sue for violations of those duties, a decision to which this Court "must afford
24   due respect." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Political
25   committees are among those who rely most on accurate voter rolls for their day-to-day
26   activities—and suffer injury when States fail to abide by the NVRA's requirements.
27   This injury to Plaintiffs' core activities is just as direct as HOME's injury when it too
28   received inaccurate information that impeded its activities.

1    The Secretary next reads *Arizona Alliance* to mandate that Plaintiffs' lack
2    standing because they "can continue to engage in core activities" even if they must
3    "dedicate additional resources" to be similarly effective. Mot. 3. *Havens* disproves that
4    argument, too. The inaccurate information in *Havens* did not bar HOME from
5    providing counseling and referral services. *Arizona Alliance* noted that it was enough
6    that HOME's activities were "perceptibly impaired." 2024 WL 4246721, at *10
7    (cleaned up). That injury was no less real or direct because HOME could "devote
8    significant resources to identify and counteract" the false information. *Id.* at *6
9    (cleaned up). The problem in *Arizona Alliance* was that the plaintiff group argued only
10   that it would have to "spend resources on education" to address "far-fetched
11   possibility" that a new law would be misapplied. *Id.* at 11. But as explained, Plaintiffs
12   have suffered the same kind of direct injury at issue in HOME—inaccurate
13   information that impairs their ability to engage in their core activities of turning out
14   Republican voters and election Republican candidates.

15   The Secretary argues that there's a difference between a nonprofit's "core
16   business" and its "mission." Mot. 2. But pleading a concrete injury is not a magic-
17   words test. When the Ninth Circuit distinguishes a "business" from a "mission," it's
18   clarifying that what matters is "the organization's 'core' activities, not merely its
19   'abstract social interests.'" *Arizona All.*, 2024 WL 4246721, at *8. So while harm to an
20   abstract mission like "maintaining clean voter rolls," "preserving honest elections," or
21   "promoting Republican values" might not be sufficient for standing, the Plaintiffs rely
22   on harm to their core activities, not just "abstract political and societal goals." *Id.* at
23   *4. HOME, after all, "would not have had standing" if the legal violations "only
24   affected its 'public advocacy' and 'public education' functions." *Id.* at *8. Rather, "the
25   injury depended on HOME's counseling services," *id.*, just as the injury here depends
26   on the Plaintiffs' voter-registration services and voter-turnout activities, *see* Am.
27   Compl. ¶¶14-17.

28   Finally, the Secretary emphasizes that "HOME had received intentionally false

3

information." Mot. 3. But the existence of an injury does not turn on the Defendants' intent. The holding of *Havens* is not that organizations suffer injury only from "intentionally false information," Mot. 3, but that organizations suffer injury if they can "show that a challenged governmental action directly injures the organization's pre-existing core activities and does so apart from the plaintiffs' response to that governmental action." *Ariz. All. for Retired Ams.*, 2024 WL 4246721, at *2. Plaintiffs have alleged as much here: willful or negligent, the Defendants' NVRA violations frustrate the Plaintiffs' efforts to turn out Republican voters and elect Republican candidates.

Any lingering doubt about standing should be resolved in Plaintiffs' favor at this stage. *Arizona Alliance* was decided on a preliminary injunction motion in which the plaintiffs were required to "make a 'clear showing' for each of these three [standing] requirements." *Id.* at *3 (citation omitted). But at the pleading stage, all inference about Plaintiffs' injuries—including any "necessary" inferences about "the chain of causation"—must be drawn in Plaintiffs' favor. *Id.* at *8.

Response to Supplemental Authority

1  Dated: October 8, 2024

2

3  Thomas R. McCarthy*
       VA Bar No. 47145
4  Gilbert C. Dickey*
       VA Bar No. 98858
5  Conor D. Woodfin*
       VA Bar No. 98937
6  CONSOVOY MCCARTHY PLLC
   1600 Wilson Boulevard, Suite 700
7  Arlington, VA 22209
   (703) 243-9423
8  tom@consovoymccarthy.com
   gilbert@consovoymccarthy.com
9  conor@consovoymccarthy.com

10  *admitted pro hac vice

11  Counsel for Plaintiffs

Respectfully submitted,

/s/ Gilbert C. Dickey

Jeffrey F. Barr
    NV Bar No. 7269
ASHCRAFT & BARR LLP
8275 South Eastern Avenue
Suite 200
Las Vegas, NV 89123
(702) 631-4755
barrj@ashcraftbarr.com

Counsel for the Republican
National Committee and Scott
Johnston

/s/ Sigal Chattah

Sigal Chattah
    NV Bar No. 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #204
Las Vegas, NV 89118
(702) 360-6200
sigal@thegoodlawyerlv.com

Counsel for the Nevada
Republican Party

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Response to Supplemental Authority