IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS DROUILLARD, et al., | Case No. 24-cv-06969-CRB |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| LYNDA ROBERTS, et al., | |
| Defendants. | |

On October 4, 2024, pro se Plaintiffs brought suit against Defendants, alleging that Marin County failed to remove ineligible voters from the voter rolls in the lead-up to the November 5, 2024 General Election. See Compl. (dkt. 1). The complaint included claims under the Fourteenth Amendment's Equal Protection Clause, the National Voter Registration Act (NVRA), and the Help America Vote Act (HAVA). Id. Plaintiffs filed a First Amended Complaint (FAC) ten days later with the same three claims. See FAC (dkt. 9). Plaintiffs then filed an application for a TRO on October 24, 2024. See App. for TRO (dkts. 10, 12). They asked the Court to (1) order Defendants "to intercept and sequester ballots returned by ineligible voters" and (2) enjoin Defendants "from opening envelopes of ballots returned by ineligible voters, or processing or counting those ballots." See Proposed TRO (dkt. 10-4). The Court denied the application on November 4, 2024, holding that Plaintiffs lacked Article III standing and that all three claims in the "sparse" FAC were unlikely to succeed. See Order Denying TRO (dkt. 31) at 2.[1]

The election went forward without interference from this Court. Plaintiffs did not

---

[1] That order provides a more detailed discussion of this case's background. The Court will not repeat it here.

1  amend their complaint, despite having expressed an intent to do so. See Mot. (dkt. 37) at
2  3; Stip. (dkt. 32) at 2. Defendants have now moved to dismiss the FAC, arguing that
3  Plaintiffs lack standing and fail to state a claim. See Mot.; Reply (dkt. 41). Plaintiffs
4  oppose the motion. See Opp'n (dkt. 38).

## I. LEGAL STANDARD

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint may be dismissed for lack of subject matter jurisdiction. Article III standing is a threshold requirement for federal court jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). To establish standing, a plaintiff must show that "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008); see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982). A qualifying injury-in-fact is one that is "distinct and palpable, as opposed to merely abstract . . . or hypothetical." Whitmore v. Ark., 495 U.S. 149, 155 (1990). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed for failure to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). When evaluating a motion to dismiss, the Court "must presume all factual allegations of the [claim] to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). A pleading must allege "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads

2

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. While a court must liberally construe pro se pleadings, Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988), such pleadings must nonetheless "meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong," Brazil v. U.S. Dep't of Navy, 66 F.3d 193, 199 (9th Cir. 1995).

## II. DISCUSSION

Defendants argue that the Court should dismiss the FAC because (A) Plaintiffs lack standing to bring suit and (B) Plaintiffs fail to state a claim as to any of the causes of action. See Mot. at 5–12.[2] Plaintiffs agree to dismiss their Equal Protection claim and their HAVA claim, but insist that they do have standing and that they have stated a claim under the NVRA. See Opp'n at 1–3.

### A. Standing

Defendants argue that Plaintiffs lack standing because—as the Court concluded in denying the application—Plaintiffs alleged no particularized injury. Mot. at 5–7 (citing Order Denying TRO at 7–8). Plaintiffs respond that the inclusion of ineligible voters on Marin County's voter rolls directly harms Plaintiffs because it means that their votes are diluted, and it undermines the integrity of elections, "directly impact[ing] Plaintiffs' ability to participate in fair elections." Opp'n at 2. The Court again agrees with Defendants.

To satisfy Article III's injury requirement, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016). To be "concrete," it must not be a "bare procedural violation." Id. at 341. "A litigant raising only a generally available grievance about the government—claiming only harm to his and every citizen's interest in proper

---

[2] Defendants also ask the Court to deny leave to amend and to stay discovery. Id. at 12–14.

3

application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." Hollingsworth v. Perry, 570 U.S. 693, 705 (2013) (internal quotation marks omitted). "A citizen may not sue based only on an asserted right to have the Government act in accordance with law." FDA v. Alliance for Hippocratic Medicine, 602 U.S. 367, 381 (2024) (internal quotation marks omitted). In voting cases specifically, only "voters who allege facts showing disadvantage to themselves as individuals have standing to sue to remedy that disadvantage." Gill v. Whitford, 585 U.S. 48, 65–66 (2018) (cleaned up).

As this Court explained previously, Plaintiffs' assertion that they have been injured because their votes were diluted by the inclusion of ineligible voters on the voter rolls "is plainly inadequate." See Order Denying TRO at 7. The Ninth Circuit held last year that vote dilution is not actionable where "any diminishment in voting power that resulted was distributed across all votes equally." Election Integrity Project California, Inc. v. Weber, 113 F.4th 1072, 1085–87 (9th Cir. 2024). The reason for that is that "any ballot—whether valid or invalid—will always dilute the electoral power of all other votes in the electoral unit equally." Id. at 1087. "Vote dilution in a legal sense occurs only when disproportionate weight is given to some votes over others within the same electoral unit." Id.; see also 1089 n.13 ("[T]he mere fact that some invalid ballots have been inadvertently counted, without more, does not suffice to show a distinct harm to any group of voters over any other."). District courts within the Ninth Circuit have also so held. See Republican National Comm. v. Francisco Aguilar, No. 2:24-cv-00518-CDS-MDC, 2024 WL 4529358, at *3–4 (D. Nev. Oct. 18 2024) ("Johnston's vote dilution claim is nothing more than a generalized grievance" and "can be raised by every and any voter in the State of Nevada."); Strong Cmtys. Found. of Ariz. Inc. v. Stephen Richer, No. CV-24-02030-PHX-KML, 2024 WL 4475248, at *8 (D. Ariz. Oct. 11, 2024) (rejecting argument, in voter list maintenance action, that individual plaintiff suffered injury "because greater numbers of potentially-ineligible registrants dilute her vote" and explaining that "even if [plaintiff's] vote was 'diluted' in the colloquial sense plaintiffs allege, that type of 'dilution' does not

4

give [her] particularized injury in fact because it is also suffered by every other voter.").[3]

Plaintiffs' related assertion that the inclusion of ineligible voters on the voter rolls undermines the integrity of the election, see Opp'n at 2, also falls flat because it "can be raised by every and any voter in" Marin County. See Aguilar, 2024 WL 4529358, at *3–4; cf. Mussi v. Fontes, No. CV-24-01310-PHX-DWL, 2024 WL 4988589, at *8 (D. Ariz. Dec. 5, 2024) (where plaintiffs asserted "that their fear of vote dilution . . . erodes their confidence in the electoral process and discourages their participation," and the claim of vote dilution was "too generalized, too speculative, and premised on too many hypothetical contingencies to qualify as an injury-in-fact," plaintiffs could not "repackage[e] their fear of vote dilution (and attendant lack of confidence in the electoral process) as an independent theory.").

Plaintiffs make an additional argument for standing—that "Defendants failed to comply with NVRA requirements to make a 'reasonable effort' to maintain accurate voter rolls," which "harms Plaintiffs as eligible voters, satisfying the standing requirement." Opp'n at 2 (citing no authority). The Court reads that argument as conflating the question of Article III standing with the question of whether Plaintiffs have plausibly alleged an NVRA claim. Those are two separate questions. Defendants read that argument as conflating the question of Article III standing with the question of statutory standing under the NVRA, which requires that a plaintiff be "aggrieved." See Reply at 4 (citing 52 U.S.C. § 20510(b)(2)). But Plaintiffs have not plausibly alleged that they were aggrieved. See Dobrovolny v. Nebraska, 100 F. Supp. 2d 1012, 1032 (D. Neb. 2000) ("plaintiffs do not have standing as 'aggrieved persons' under the NVRA because they do not allege that their rights to vote in a federal election have been denied or impaired."); Order Denying TRO at 7 n.12 ("Further, any suggestion that Plaintiffs "los[t]" their "constitutional right" to vote, see Mem. ¶ 25, is plainly wrong. Nothing prevents Plaintiffs from voting."). And, even if Plaintiffs had satisfied statutory standing, Article III standing requires more. While the

---

[3] Plaintiffs assert that "courts have recognized" that vote dilution is sufficient to confer standing, but they cite to no cases in support of that assertion. See Opp'n at 2.

RETRIEVED FROM DEMOCRACYDOCKET.COM

"NVRA may bolster the concreteness of certain injuries that flow from statutory noncompliance," Article III injury must be "both concrete and particularized." See Mussi, 2024 WL 4988589, at *4. Defendants' alleged violation of the NVRA here would not injure only Plaintiffs; it would be shared by all Marin County voters. See id. at *6 (generalized grievance does not confer standing).

Because Plaintiffs have no particularized injury and sue only "'to have the Government act in accordance with law,'" see Alliance for Hippocratic Medicine, 602 U.S. at 381, they lack standing.

### B. Failure to State a Claim

Defendants next argue that the FAC fails to state a claim for violation of the NVRA. Mot. at 10–12. The NVRA requires states to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from official lists of eligible voters by reasons of . . . a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4)(B). The NVRA's safe harbor provision is one way that states can demonstrate compliance with that requirement. See id. § 20507(c)(1). The FAC alleges only that the NVRA requires states to "conduct programs to ensure only eligible voters remain on voter registration rolls," and that "Defendants' failure to implement these programs . . . has allowed thousands of ineligible voters to remain on the voter rolls." FAC ¶¶ 16–17.[4] That allegation does not state a claim.

First, setting aside the evidence of compliance presented to the Court in connection with the application for a TRO, see Order Denying TRO at 17–18 ("Defendants do have programs in place to remove ineligible voters, as evidenced by some of Plaintiffs' own exhibits . . ."), Plaintiffs' allegation is conclusory. See In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citations omitted) (courts must "accept the plaintiff['s]

---

[4] As the Court explained previously, "the FAC offers no support for the 'thousands of ineligible voters' allegation, and the memorandum in support of the application for a TRO abandons that allegation entirely," instead asserting that "89 'confirmed out-of-state voters,' and 994 'alleged out-of-county voters' remain on the voter rolls." See Order Denying TRO at 17 (citing Mem. (dkt. 10-1) ¶¶ 21, 22).

6

allegations as true and construe them in the light most favorable to the plaintiff[]," but need not "accept as true" "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). The FAC fails to allege how Defendants' voter list maintenance programs violate the NVRA.

Second, the FAC does not allege either that the California Elections Code fails to comply with the NVRA, that Defendants have failed to implement the California Elections Code, or even that Marin County has failed to satisfy the NVRA's safe harbor provision. But see Opp'n at 3 (asserting in conclusory fashion that Defendants' implementation of the safe harbor provision "is insufficient and fails to meet the 'reasonable effort' standard set by federal law."). Nor does the FAC allege why the presence of some ineligible voters on Marin County's voter rolls means that California's general program of voter list maintenance is not reasonable. But see id. (asserting in conclusory fashion that the inclusion of out-of-state voters on the voter rolls demonstrates "that Defendants have not implemented a reasonable program to ensure the accuracy of voter registration rolls").[5] The NVRA does not require perfect voter list maintenance programs. See Bellitto v. Snipes, 935 F.3d 1192, 1207 (11th Cir. 2019) ("the NVRA only requires that Broward County make a reasonable effort, not an exhaustive one."); see also Husted v. A. Philip Randolph Institute, 584 U.S. 756, 778 (2018) (expressing skepticism of "supposed 'reasonableness' requirement").

Plaintiffs add, in their opposition brief, that "Defendants failed to follow required procedures, such as changing a voter's status . . . when learning that the voter moved . . .

---

[5] The presence of out-of-state voters on the voter rolls does not mean that there are ineligible voters on the voter rolls. As the Court explained previously, "[n]ot all voters who change their address are ineligible to vote: a voter does not necessarily lose his residency if he moves to another state, and the California Elections Code specifically allows voters to temporarily change a mailing address but maintain their domicile for purposes of voting if, for example, they are attending school or serving in the military elsewhere. See, e.g., Cal. Elec. Code. § 2021(a) ('A person who leaves his or her home to go into another state or precinct in this state for temporary purposes merely, with the intention of returning, does not lose his or her domicile.'), § 2025 ('A person does not . . . lose a domicile solely by reason of his or her . . . absence from a place while employed in the service of the United States or of this state . . . nor while a student of any institution of learning, nor while kept in an almshouse, asylum or prison.')." Order Denying TRO at 13.

7

sending residency confirmation cards and adhering to timelines for removing ineligible voters." Opp'n at 3. Those allegations are not in the FAC. Even so, failing to change a voter's status when learning that the voter moved out of state is not actually a requirement of the NVRA. See 52 U.S.C. § 20507; Reply at 5 n.2 (asserting that it is a requirement under the California Elections Code §§ 2225(f); 2226(a)(2), (c)). And Plaintiffs' assertions about residency confirmation cards and timelines are conclusory. Plaintiffs insist that those assertions are "verifiable" and that they can be "fully substantiate[d]" if the Court grants them "access to voter roll maintenance records and related data exclusively within Defendants' position." Opp'n at 3 (adding that "[a]llowing limited discovery on the NVRA claim will ensure that Plaintiffs can present evidence supporting their allegations."). That is not how discovery works. See Matilock, Inc. v. Pouladdej, No. 20-CV-01186-HSG, 2020 WL 3187198, at *4 (N.D. Cal. June 15, 2020) ("Rule 8 is . . . designed to prevent parties from filing complaints to conduct fishing expeditions in the hope that they may uncover some helpful evidence. See Iqbal, 556 U.S. at 678–79 ('Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.')."); Lloyd v. Lakritz, No. 15-cv-02478-PHX-DLR, 2016 WL 2865873, at *6–7 (D. Ariz. May 17, 2016) (plaintiff "may not throw out conclusory allegations in hopes of supporting her claims through discovery").

Plaintiffs also submit—but do not address in their opposition brief—a declaration by Plaintiff Francis Drouillard. See Drouillard Decl. (dkt. 38-1). Drouillard asserts that he purchased elections results data on the November 5, 2024 General Election, which shows that 516 registered voters who moved out of state and 60 confirmed out-of-state voters participated in the election. Id. ¶¶ 3, 4. Even if these assertions were allegations in the FAC, the presence of out-of-state voters on the voter rolls does not support a reasonable inference that Defendants' voter roll maintenance program is unreasonable. Again, "[n]ot all voters who change their address are ineligible to vote." Order Denying TRO at 13 (citing Cal. Elec. Code. §§ 2021(a), 2025).

Plaintiffs have failed to state a claim under the NVRA.

8

### III. CONCLUSION

Because Plaintiffs lack standing and fail to state a claim for violation of the NVRA, the Court GRANTS the motion, without leave to amend.

**IT IS SO ORDERED.**

Dated: January  27 , 2025



CHARLES R. BREYER
United States District Judge