AARON D. FORD
Attorney General
GREGORY D. OTT (Bar No. 10590)
Chief Deputy Attorney General
EMILY D. ESPINOSA (Bar No. 16853)
Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
T:(775) 684-1195
F: (775) 684-1108
E: gott@ag.nv.gov
edespinosa@ag.nv.gov

*Attorneys for Francisco Aguilar in his official capacity as Nevada Secretary of State*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, NEVADA REPUBLICAN PARTY, and SCOTT JOHNSTON,<br><br>Plaintiffs,<br><br>vs.<br><br>FRANCISCO V. AGUILAR, in his official capacity as Nevada Secretary of State' LORENA PORTILLO, in her official capacity as the Registrar of Voters for Clark County; WILLIAM 'SCOTT' HOEN, AMY BURGANS, STACI LINDBERG, and JIM HINDLE, in their official capacity as County Clerks,<br><br>Defendants. | Case No. 2:24-cv-00518-CDS-MDC<br><br>**NEVADA SECRETARY OF STATE'S SUPPLEMENTAL BRIEFING** |

Defendant FRANCISCO AGUILAR in his official capacity as Secretary of State for the State of Nevada by and through their counsel Attorney General for the State of Nevada AARON D. FORD, hereby submit their Supplemental Brief addressing the Ninth Circuit's recent en banc decision in *Arizona Alliance for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026).

. . .

The Secretary provides this supplemental authority in support of his Motion to Dismiss Plaintiffs' Second Amended Complaint, as *Mayes* clarifies and controls the organizational-standing framework governing Plaintiffs' claims under Section 8 of the National Voter Registration Act ("NVRA").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In *Mayes*, the Ninth Circuit concluded that organizational plaintiffs must show that a challenged law "directly affects and interferes with [their] core business activities" to establish injury-in-fact. *Mayes*, slip op. at 8 (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024)). The court squarely rejected the notion that frustration of mission, abstract objections to government policy, or voluntary diversion of resources to advocacy efforts can create standing, expressly overruling prior Ninth Circuit cases that adopted those expansive theories. *Mayes*, slip op. at 18–19.

Critically, the en banc court held that organizations lack standing to challenge Arizona's Cancellation Provision because they could not show any concrete or particularized injury to their core activities, despite alleging diverted resources and increased educational efforts. *Mayes*, slip op. at 5, 14–15. Those allegations mirror the standing theories advanced by Plaintiffs here under the NVRA. *See generally* ECF 131. The Ninth Circuit's reasoning is therefore directly controlling.

The Secretary submits this Supplemental Brief to demonstrate that *Mayes* confirms the absence of organizational standing in this case, reinforces that Plaintiffs' Second Amended Complaint cannot meet Article III's injury-in-fact requirement, and establishes that amendment would be futile. Under *Mayes*, Plaintiffs' theories fail as a matter of law and should be dismissed by this Court.

## II. PROCEDURAL AND RELEVANT BACKGROUND

The Republican National Committee, Nevada Republican Party, and Scott Johnston (collectively, "Plaintiffs") filed this action alleging violations of Section 8 of the NVRA, asserting that the Secretary of State and several county election officials failed to conduct

reasonable voter-list maintenance. *See* ECF 1, at 10–17. After two rounds of motions to dismiss, the Court determined that Plaintiffs had not adequately established Article III standing and granted them leave to amend. ECF 130. Plaintiffs then filed their Second Amended Complaint ("SAC"). ECF 131.

Following the SAC, the Secretary again moved to dismiss on standing and merits grounds. ECF 132. The parties then filed a Joint Motion to Continue until the Ninth Circuit issued its en banc decision in *Mayes*. ECF No. 172. In *Mayes*, three organizational plaintiffs challenged amendments to Arizona's election code, asserting that the provisions would interfere with their voter registration, voter education, and voter-mobilization activities. 186 F.4th, at 629–30. The district court granted a preliminary injunction, concluding that the organizational plaintiffs had standing. *Id.* at 628–29. The State appealed, the Ninth Circuit originally reversed, and then the Ninth Circuit took the matter en banc. *Id.* at 629–30. The en banc court vacated the preliminary injunction after finding that the organizations lacked standing to challenge Arizona's Cancellation Provision because they failed to demonstrate that the provision "directly affect[ed] and interfere[d] with [their] core business activities and that they were unlikely to succeed on the merits of their challenge to the Felony Provision." *Id.* at 641.

The Ninth Circuit explained that organizational plaintiffs must satisfy the same injury-in-fact requirements applicable to individuals and cannot rely on allegations of "frustrated mission" or "diversion of resources" unless the challenged conduct impairs the organizations' ability to perform its core functions, not merely its policy or advocacy-related activities. *Id.* at 631–34.

. . .

. . .

. . .

. . .

. . .

. . .

The en banc court expressly overruled prior Ninth Circuit precedent[1] that had previously permitted organizational standing based on broad, mission-frustration theories. *Id.* at 634.

Relevant to this matter, the organizations in *Mayes* alleged that Arizona's Cancellation Provision would require them to redirect resources, alter training, educate voters about the new law, and change their outreach strategies. 186 F.4th, at 635. The en banc court concluded that such allegations do not constitute a concrete injury and are "highly speculative" because they do not show actual or imminent impairment of the organizations' ability to perform their core activity of registering and educating voters. *Id.*

The Secretary submits this background to demonstrate that the Ninth Circuit's controlling en banc decision in *Mayes* is directly applicable to the standing issues presented in Plaintiffs' Second Amended Complaint. As discussed in greater detail below, Plaintiffs' alleged injuries as they relate to the Cancellation Provision mirror the allegations rejected by the en banc court in *Mayes* and should be dismissed by this Court.

## III. SUPPLEMENTAL ARGUMENT

The Ninth Circuit's en banc decision in *Mayes* reshaped the standing analysis for organizations. *Mayes* held that diverted resources, frustrated missions, modified messaging, and adjustments to program activities do not constitute Article III injury unless the challenged governmental action directly affects and interferes with the organization's core business activities. *Mayes*, 186 F.4th, at 631–34. Because Plaintiffs' SAC relies on theories repudiated by *Mayes*, and because Plaintiffs fail to allege any direct interference with their core activities, this Court must dismiss the SAC for lack of standing.

. . .

---

[1] The Ninth Circuit overruled precedent including *Nielsen v. Thornell*, 101 F. 4th 1164 (9th Cir. 2024); *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664 (9th Cir. 2023); *Sabra v. Maricopa County Community College District*, 44 F.4th 867 (9th Cir. 2022); *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021); *National Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015); *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216 (9th Cir. 2012); and *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review*, 959 F.2d 742 (9th Cir. 1991).

### A. The Ninth Circuit's En Banc Decision in *Mayes* Controls the Standing Analysis.

The Ninth Circuit held unequivocally that organizational plaintiffs must satisfy the same Article III requirements as individuals. *Mayes*, 186 F.4th at 630–31. They must allege a concrete, particularized, actual or imminent injury, fairly traceable to the defendant, and redressable by the court. *Id.* at 631–35.

In *Mayes*, the organizational plaintiffs presented a theory of injury that is substantively indistinguishable from that advanced by Plaintiffs here. The plaintiffs in *Mayes* asserted a change in state election law would frustrate their voter registration and voter education missions, require diversion of staff time and resources, complicate outreach efforts, and impair their ability to engage effectively with voters. 186 F.4th, at 629–30. The en banc court rejected those assertions, holding that they did not demonstrate any "actual or imminent injury" to the organizations' core functions and were instead speculative fears or self-directed changes in operations that did not satisfy Article III. *Id.* By directly overruling prior Ninth Circuit precedent, the en banc court made clear that such changes cannot constitute injury-in-fact unless the challenged government action itself directly affects and interferes with an organization's core business activities. *Id.* at 634.

That rule alone resolves the standing question in the Secretary's favor. Plaintiffs allege that Nevada's list-maintenance practices make it harder for them to determine which voters to contact, require them to spend resources on "residency discrepancy reports," and force them to adjust their outreach, modeling, and ballot-chase programs. ECF 131 at 6. But under *Mayes* these are precisely the types of voluntary, mission-driven activities that do not constitute injury-in-fact because they arise from Plaintiffs' own strategic choices, not from any direct interference with Plaintiffs' core operations. Plaintiffs are not regulated by Nevada's list-maintenance activities and remain fully able to perform all of their core political functions.

. . .

. . .

As in *Mayes*, Nevada's conduct affects voters and election officials; Plaintiffs seek to challenge regulations of others, and any downstream impact on their partisan activities is too attenuated and speculative to support standing. *Mayes*, 186 F.4th at 646–47 (concurrence in part).

Moreover, *Mayes* forecloses Plaintiffs' attempt to claim injury through diversion of resources or changes to partisan strategy. The en banc court reiterated that an organization "cannot spend its way into standing" by allocating resources to oppose or respond to government action it dislikes. *Id.* at 633. Plaintiffs' allegations that they must hire staff, run database checks, modify campaign plans, or re-target voters all fall within the category of self-selected expenditures that *Mayes* hold legally irrelevant. The NVRA does not regulate Plaintiffs' operations, does not impose obligations on them, and does not restrict their ability to carry out their core partisan activities. Their asserted injuries flow from their own decisions about how to respond to publicly available voter-roll information, not from any legally cognizable harm caused by the Secretary or County Clerks. Finally, *Mayes* confirms that speculative future harms, such as Plaintiffs' assertion that inaccurate voter rolls "might" complicate outreach or "might" impact partisan operations, do not satisfy Article III. *Id.* at 634–35. The en banc court emphasized that speculative fears about how a statute "might" operate do not constitute concrete injury. *Id.* Plaintiffs' speculative allegations therefore rest on the same conjectural logic that *Mayes* held insufficient.

Accordingly, Plaintiffs cannot allege injury-in-fact because Nevada's list-maintenance practices do not directly impair any core organizational activity. They cannot allege traceability because their alleged injuries arise from their own strategic, political choices, not the Secretary's conduct. And they cannot allege redressability because the NVRA's statutory structure—including the 90-day blackout period referenced in the SAC—precludes the relief sought. Under *Mayes*, organizational standing is not merely unmet but is instead legally impossible for Plaintiffs to cure through amendment.

. . .

## IV. CONCLUSION

The Ninth Circuit's en banc decision in *Mayes* confirms that organizational standing requires a showing that the challenged government action directly interferes with an organization's core business activities, and that organizations may not "spend their way into standing" through resource diversion or mission-frustration claims. Plaintiff's alleged injuries are directly akin to those rejected in *Mayes* and do not reflect any direct impairment caused by Nevada's list-maintenance processes.

Because Plaintiffs cannot satisfy Article III under the controlling en banc standard, and amendment would ultimately be futile, the Second Amended Complaint should be dismissed.

Respectfully submitted this 23rd day of September 2026.

AARON D. FORD
Attorney General

By: /s/ *Emily D. Espinosa*
GREGORY D. OTT
Chief Deputy Attorney General
Nevada Bar No. 10590
EMILY D. ESPINOSA
Deputy Attorney General
Nevada Bar No. 16853
Office of the Attorney General
100 N. Carson Street
Carson City, Nevada 89701
(775) 684-1195
gott@ag.nv.gov
edespinosa@ag.nv.gov

*Attorneys for Francisco Aguilar in his official capacity as Nevada Secretary of State*

## CERTIFICATE OF SERVICE

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on September 23, 2026, I filed the foregoing document ***Nevada Secretary of State's Supplemental Briefing*** via this Court's electronic filing system. Parties that are registered with this Court's EFS will be served electronically.

/s/ *Mark Cryer*
AG Legal Secretary