Jeffrey F. Barr (NV Bar No. 7269)
Evans Fears Schuttert McNulty Mickus
6720 Via Austi Pkwy, Suite 300
Las Vegas, NV 89119
jbarr@efsmmlaw.com

Thomas R. McCarthy* (VA Bar No. 47145)
Gilbert C. Dickey* (VA Bar No. 98858)
Conor D. Woodfin* (VA Bar No. 98937)
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

**Admitted pro hac vice*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

REPUBLICAN NATIONAL COMMITTEE, NEVADA REPUBLICAN PARTY, and SCOTT JOHNSTON,

Plaintiffs,

v.

FRANCISCO AGUILAR, *in his official capacity as Nevada Secretary of State*; LORENA PORTILLO, *in her official capacity as the Registrar of Voters for Clark County*; WILLIAM "SCOTT" HOEN, AMY BURGANS, STACI LINDBERG, and JIM HINDLE, *in their official capacities as County Clerks*,

Defendants.

No. 2:24-CV-00518

**PLAINTIFFS' SUPPLEMENTAL RESPONSE BRIEF**

Defendants relate only half of the holding in *Mayes*, and they ignore obvious injuries that Plaintiffs suffer because of Nevada's poor voter-list management. Defendants argue that mere advocacy or disagreement does not support standing. But the argument is a strawman, since Plaintiffs don't rely on mere "policy or advocacy-related activities" to support their standing. *Contra* Sec'y Br. 3. Rather, they allege several concrete setbacks to their "core business activities" of registering Republicans, turning out voters, and electing candidates. *Ariz. All. for Retired Ams. v. Mayes*, 186 F.4th 622, 633 (9th Cir. 2026) (en banc). The injury in *Mayes* was insufficient because the organizations had no "evidence" of their speculative "fear that the voters they help register might have their new registrations canceled." *Id.* at 634. But Plaintiffs here don't rely on speculative future injuries, and they don't need evidence at this stage. They allege ongoing, concrete setbacks to their core activities. Their ability to win elections and turn out Republican voters is impaired by inaccurate registration records, and directly attributable to Nevada's unreasonable programs that violate the NVRA. Those many allegations at least plausibly satisfy Article III standing, which is all that's required at this stage.

## <u>ARGUMENT</u>

### I. Plaintiffs allege many injuries beyond voluntary spending.

Defendants seek to recast Plaintiffs' injuries as mere voluntary spending and reallocation of resources. *See* Sec'y Br. 6; Interv. Br. 6-7. But Plaintiffs allege far more than those blinkered arguments address. Plaintiffs allege an injury to their core business activities of identifying and turning out Republican voters, conducting campaigns, and winning elections. 2AC ¶¶13-17. The "frustration of [their] mission comes directly from an action that 'directly affects and interferes with [their] core business activities'"—Nevada's failure to conduct reasonable list maintenance. *Mayes*, 186 F.4th at 633 (cleaned

up). Those allegations are not speculative or distant; Nevada's voter rolls are inaccurate, and the frustration of Plaintiffs' activities is ongoing. 2AC ¶¶46-50, 57-84. Plaintiffs' ability to identify Republican voters and support Republican candidates is hampered by violations of the NVRA. That is an Article III injury. *See Bost v. Ill. State Bd. of Elections*, 607 U.S. 71 (2026); *RNC v. NCSBE,* 120 F.4th 390, 397 (4th Cir. 2024).

Nearly all of Defendants' supplemental briefing rests on a false premise. Plaintiffs allege that they've diverted resources and worked to educate voters and staff to combat the harms of Nevada's failure to abide by the NVRA. But Defendants erroneously presume that Plaintiffs present each of those allegations as "itself an injury-in-fact." *Cf. Mayes*, 186 F.4th at 633 (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-54 (2010)). But Plaintiffs' diverted resources, the lost fundraising opportunities, and the wasted electoral efforts caused by poor list maintenance, serve as "evidence of [their] injuries." *Id.* Even if Plaintiffs did not divert those resources, they would still feel the injury Defendants cause to their electoral efforts and other core activities. The spending, diverted resources, and education efforts arise to *combat* the "the frustration of [the] organization's mission" to turn out voters and elect candidates. *Id.* at 632. Defendants' focus on Plaintiffs' expenditures—to the exclusion of the underlying injuries—is a red herring.

*Mayes* thus confirms that Plaintiffs' allegations support organizational standing. The *Mayes* plaintiffs lacked standing because "[n]othing in the Cancellation Provision arguably require[d] county recorders to cancel a voter's new registration," which was the source of the organizations' alleged injury. *Id.* at 634. The plaintiffs simply misread the statute, which lead them to fear a speculative harm for which they had "no evidence." *Id.* at 634-35. Defendants omit that core reasoning of the en banc majority, but it is fatal

to their argument. No one disputes—nor could they dispute—that federal law requires Nevada to maintain its voter rolls. Nevada's failure to do so (a factual allegation that must be taken as true) injures Plaintiffs by affecting their "core business activities" to turn out voters and elect Republican candidates. *Id.* at 631. And unlike the preliminary-injunction posture in *Mayes*, Plaintiffs here don't need to provide "evidence" of their injuries just yet. *Cf. id.* at 634-35. They must only allege them.

Defendant's reading of *Mayes* is also out of step with other post–*Alliance for Hippocratic Medicine* cases, including *Bost*, which *Mayes* cites. As Plaintiffs discussed, NVRA violations cause competitive harms to Plaintiffs and the Republican candidates they represent. Pls. Supp. Br. 6-7, 9. The RNC brought this case standing on its own injuries, and in a "representational capacity to vindicate the rights of its … candidates" running as Republicans. 2AC ¶12. Those are not "general objections," *contra* Interv. Br. 8 (citing *Mayes*, 186 F.4th at 632), because Plaintiffs are not "common competitors in the economic marketplace" when it comes to elections and voter registration, *Bost*, 607 U.S. at 77.

Intervenors attempt to limit *Bost* to "the counting of votes," and claim that the NVRA does not affect campaign activities in a similar way. Interv. Br. 9, n.1. Their argument ignores the practical injuries that *Bost* acknowledges candidates suffer. First, candidates have an interest in "a fair process and an accurate result" and in "the integrity of the electoral process," since both impact the winner's "political legitimacy." *Bost*, 607 U.S. at 77-78. While ballot-counting rules risk impairing those interests, so do voter-registration rules. *Who* votes in elections affects the outcome as much as *how* their votes are counted. Nevada's failure to carry out reasonable list maintenance "deprives candidates of the opportunity to compete for election" under fair rules just as much as

unlawful vote-counting rules do. *Id.* at 79. Second, voter registration drives are an essential campaign activity that Plaintiffs allege is impaired, just as the campaign activities of a candidate were impaired in *Bost.* And because the RNC and NVGOP both "spend untold time and resources seeking" to helping to elect Republican candidates, *id.* at 78, and they represent those candidates for associational standing purposes, they share the same interests here that provided standing in *Bost.*

## II. Plaintiffs' injuries are directly attributable to the NVRA violations.

The Secretary of State also misreads *Mayes* by arguing that Plaintiffs' injuries cannot be "direct" because "Nevada's conduct affects voters and election officials," and the effect on Plaintiffs is "downstream." Sec'y Br. 5-6. Even Intervenors realize the argument misreads *Mayes*, which "clarified that a plaintiff need not be 'directly regulated by a challenged law' to be harmed.'" Interv. Br. 6. An organization's injury can be "direct" when an act "'directly affect[s] and interfere[s] with [an organization's] core business activities'" even if the organization itself is not "directly regulated," so long as it "results in a real harm that is specific to the organization." *Mayes* 186 F.4th at 633 (quoting *All. for Hippocratic Med.*, 602 U.S. at 395). "[A]n unlawful election rule" that "regulat[es] ballot-counting, not candidates," for example, "can injure a candidate in several ways." *Id.* (citing *Bost*, 607 U.S. at 76-77) (cleaned up).

Plaintiffs allege several direct injuries. 2AC ¶¶57-97. Their core organizational activities are directly impaired by violations of the NVRA. For example, they cannot determine whether Republican voter registrations—the very lists that define who the party represents—are accurate. They have "an undeniably different—and more particularized—interest in knowing" who makes up their electorate, but cannot do so reliably because the poor list maintenance. *Bost,* 607 U.S. at 78 (cleaned up). The Fourth

Circuit upheld allegations of an identical injury—unlawful list maintenance "directly 'affected and interfered with'" the RNC's "core mission." *RNC v. NCSBE,* 120 F.4th 390, 397 (4th Cir. 2024) (quoting *All. for Hippocratic Med.*, 602 U.S. at 394). *Mayes* confirms that those kinds of injuries are sufficient. 186 F.4th at 633.

Intervenors also devote pages of their supplemental brief to litigating the merits of this case, arguing that Plaintiffs' injuries are not traceable or redressable. *See* Interv. Br. 9-10. Their arguments rehash issues briefed before the Court ordered supplemental briefing. For the reasons Plaintiffs have explained, *see* Pls. Opp. to MTD (Doc. 141), the complaint plausibly alleges that Defendants are failing to abide by their statutory list-maintenance obligations in a way that injures Plaintiffs.

## CONCLUSION

The Court should deny Defendants' and Intervenors' motions to dismiss.

Dated: October 2, 2026

Respectfully submitted,

*/s/ Jeffrey F. Barr*

Jeffrey F. Barr (NV Bar No. 7269)
Evans Fears Schuttert McNulty Mickus
6720 Via Austi Pkwy, Suite 300
Las Vegas, NV 89119
jbarr@efsmmlaw.com

Thomas R. McCarthy*
Gilbert C. Dickey*
Conor D. Woodfin*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

**Admitted pro hac vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of PLAINTIFFS' SUPPLEMENTAL RESPONSE BRIEF was served on counsel of record on this 2nd day of October, 2026, the Court's CM/ECF System.

By: *<u>/s/ Jeffrey F. Barr</u>*